# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHIVA STEIN, derivatively on behalf of The Goldman Sachs Group, Inc., and individually as a Stockholder of The Goldman Sachs Group, Inc., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 2017-0354-SG |
| | ) ) | |
| LLOYD C. BLANKFEIN, M. MICHELE BURNS, GARY D. COHN, MARK A. FLAHERTY, WILLIAM W. GEORGE, JAMES A. JOHNSON, ELLEN J. KULLMAN, LAKSHMI N. MITTAL, ADEBAYO O. OGUNLESI, PETER OPPENHEIMER, DEBORA L. SPAR, MARK E. TUCKER, DAVID A. VINIAR, MARK O. WINKELMAN, and THE GOLDMAN SACHS GROUP, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Date Submitted:  February 4, 2019
Date Decided: May 31, 2019

Brian E. Farnan, Michael J. Farnan, and Rosemary J. Piergiovanni, of FARNAN LLP, Wilmington, Delaware; OF COUNSEL: A. Arnold Gershon and Michael A. Toomey, of BARRACK, RODOS & BACINE, New York, New York, *Attorneys for Plaintiff.*

Kevin G. Abrams, J. Peter Shindel, Jr., and Matthew L. Miller, of ABRAMS & BAYLISS LLP, Wilmington, Delaware; OF COUNSEL: Robert J. Guiffra, Jr. and David M.J. Rein, of SULLIVAN & CROMWELL LLP, New York, New York, *Attorneys for the Director-Defendants.*

Gregory V. Varallo, Kevin M. Gallagher, and Robert L. Burns, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Defendant The Goldman Sachs Group, Inc.*

GLASSCOCK, Vice Chancellor

Self-interest dulls the keenest equitable acuity. Justice Tunnell's words from nearly seventy years ago remain a bedrock of corporate equity today, and their reasoning will undoubtedly persist as long as corporations are directed by women and men: "Human nature being what it is, the law, in its wisdom, does not presume that directors will be competent judges of the fair treatment of their company where fairness must be at their own personal expense."[1] Instead, the burden in such a situation is on the directors, who must demonstrate "not only that the transaction was in good faith,"[2] but must also show that it was entirely fair to the entity.

This matter involves the quintessence of director self-interest: self-compensation. It is before me on the Defendants' Motion to Dismiss.[3] Our Supreme Court recently clarified the standard for ratification of director self-compensation, shifting the standard of review to business judgment only where stockholders approve a compensation plan that does not involve future director discretion in setting the amount of self-payment.[4] The compensation plans at issue here manifestly fail that standard-shifting test. Nonetheless, the Director-Defendants move to dismiss on two grounds.[5]

---

[1] *Gottlieb v. Heyden Chem. Corp.*, 90 A.2d 660, 663 (Del. Ch. 1952).
[2] *Id.*
[3] The route by which this matter, filed on May 9, 2017, has only now arrived at the Motion to Dismiss stage of litigation is described adequately in my Letter Opinion of October 23, 2018.
[4] *See In re Inv'rs Bancorp, Inc. S'holder Litig.*, 177 A.3d 1208 (Del. 2017).
[5] The Goldman Sachs Group, Inc. joined the Director-Defendants' Motion to Dismiss briefing. D.I. 9, 14.

First, they point out that the plans in question absolve, in advance, the directors for breaches of duty in self-dealing, absent a demonstration of bad faith; in other words, they provide a kind of immaculate ratification.[6] I find that, to the (dubious) extent that our law would respect such an untethered waiver of fiduciary duty, the circumstances here fall far short of the kind of specificity necessary to support a waiver of stockholder rights.

Second, and more convincingly, the Defendants argue that the matter should be dismissed under Rule 12(b)(6), because the Plaintiff fails adequately to allege that the self-awarded director compensation was not entirely fair. The Plaintiff attacks here only the amount, and not the process by which that amount was determined. Moreover, the amount of compensation, in light of that of Goldman's peers, is high, but not shockingly so. However, viewed under the applicable standard, reasonable conceivability, I find the Complaint is sufficient to proceed.

The Plaintiff also makes two stale disclosure claims involving compensation, which are dismissed. My reasoning follows.

## I. BACKGROUND

At this Motion to Dismiss stage, I assume the facts found in the Complaint to be true. The following facts come from the Complaint.

---

[6] Stockholder ratification, in other words, unsullied by the gritty details of any particular transaction, consideration of which (according to counsel at oral argument) is precisely what the stockholders meant to avoid.

3

*A. The Parties*

Plaintiff Shiva Stein is a common stockholder of The Goldman Sachs Group, and has been a common stockholder continuously since June 12, 2014.[7]

Defendant The Goldman Sachs Group, Inc. ("Goldman") is a Delaware corporation that operates as a bank holding company and financial holding company. Its common stock has one vote per share and trades on the New York Stock Exchange.[8]

Defendant Lloyd C. Blankfein is Goldman's Chairman of the Board and Chief Executive Officer and has been a Board member since April 2003.[9]

Defendant M. Michele Burns has been a director of Goldman since October 2011.[10]

Defendant Mark A. Flaherty has been a director of Goldman since December 2014.[11]

Defendant William W. George has been a director of Goldman since December 2002.[12]

---

[7] Compl. ¶ 3.
[8] *Id.* ¶ 4.
[9] *Id.* ¶ 5.
[10] *Id.* ¶ 6.
[11] *Id.* ¶ 7.
[12] *Id.* ¶ 8.

Defendant James A. Johnson has been a director of Goldman since May 1999.[13]

Defendant Ellen J. Kullman has been a director of Goldman since December 2016.[14]

Defendant Lakshmi N. Mittal has been a director of Goldman since June 2008.[15]

Defendant Adebayo O. Ogunlesi has been a director of Goldman since October 2012.[16]

Defendant Peter Oppenheimer has been a director of Goldman since March 2014.[17]

Defendant Debora L. Spar was a director of Goldman from June 2011 until April 28, 2017.

Defendant Mark E. Tucker was a director of Goldman from November 2012 until April 28, 2017.

Defendant David A. Viniar has been a director of Goldman since January 2013.[18]

---

[13] *Id.* ¶ 9.
[14] *Id.* ¶ 10.
[15] *Id.* ¶ 11.
[16] *Id.* ¶ 12.
[17] *Id.* ¶ 13.
[18] *Id.* ¶ 14.

Defendant Mark O. Winkelman has been a director of Goldman since December 2014.[19]

Defendant Gary D. Cohn became a member of the Board in June 2006 and was a Board member and Goldman's president and chief operating officer until December 31, 2016.[20]

I refer to the Defendants, excluding Defendant Goldman Sachs Group, as "the Directors," and collectively as "the Board."

*B. Goldman's Director Compensation*

According to the Complaint, non-employee Director compensation is set by the Goldman Board. In the years pertinent here, each non-employee Director of Goldman received an annual grant of restricted stock units valued at $500,000.[21] In addition to those restricted stock units, the Board has authorized the non-employee Directors to receive an annual retainer of $75,000 in cash or restricted stock units, at the Director's choice.[22] Those Directors are also able to earn an annual $25,000 chairmanship fee in cash or RSUs, at the Director's choice.[23] The Board has additionally authorized Goldman to pay up to $20,000 to each non-employee Director for a matching gift to charities.[24] Altogether, per the Plaintiff, each non-

---

[19] *Id.* ¶ 15.
[20] *Id.* ¶ 16.
[21] *Id.* ¶ 20.
[22] *Id.*
[23] *Id.*
[24] *Id.*

6

employee Director is eligible to receive $605,000 in annual compensation.[25] In January 2015, 2016, and 2017, the Board authorized the issuance of restricted stock units to the non-employee Directors, which cost Goldman generally $500,000 to $600,000 per non-employee Director.[26]

Per the Plaintiff, the non-employee Directors' compensation is "substantially more than that of the non-employee directors of the four U.S. peer companies that [the] Defendants identified in their 2015, 2016, and 2017 annual meeting proxy statements."[27] The average compensation for those peer companies was $352,000 in 2015 and $353,000 in 2016.[28] Goldman had less net revenue and net income than each of those peers in 2015, and it had less net revenue than each of those peers and less net income than three of its peers in 2016.[29] Still, its non-employee Directors were more highly compensated than those of Goldman's peers.

The Plaintiff alleges that at an average of $605,000 per year, the non-employee Directors' compensation is grossly excessive, so as to amount to a breach of the Directors' fiduciary duty of loyalty.[30]

---

[25] *Id.* ¶ 21.
[26] *Id.* ¶¶ 22–27.
[27] *Id.* ¶ 28.
[28] *Id.*
[29] *Id.* ¶¶ 29–30.
[30] *Id.* ¶¶ 21, 52.

*C. Disclosure Claims*

### 1. The 2013 and 2015 Stock Incentive Plans

Much of this litigation centers around Goldman's stock incentive plans ("SIPs"). These SIPs must be approved by the company's stockholders, and are intended to "attract, retain, and motivate officers, directors, and employees," and "to compensate them for their contributions to the long-term growth and profits" of Goldman.[31] The SIPs at issue were approved by Goldman stockholders in 2013 and 2015.[32] The majority of Goldman's director compensation is paid pursuant to the company's SIPs, at the Board's discretion.[33]

Adoption of the SIPs requires approval of the Goldman stockholders, "in accordance with Treasury Regulation § 1.162-27(e)(4), Section 422 of the Internal Revenue Code, the rules of the New York Stock Exchange and other applicable law."[34] Treasury Regulation § 1.162-27(e)(4)(v) requires the "material terms of a performance goal" to be "adequately disclosed to shareholders," as determined using "the same standards as apply under the Exchange Act."[35] The Exchange Act, in turn, provides:

---

[31] Director-Defs.' Mot. to Dismiss, Ex. 6, at 71.
[32] Compl. ¶ 34.
[33] *Id.* ¶ 32.
[34] *Id.* ¶ 33.
[35] *Id.* ¶ 34.

Item 10. Compensation Plans.
If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

    (a)    Plans subject to security holder action.

        (1)    Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.[36]

The Plaintiff submits that the Director-Defendants violated this provision when asking stockholders to approve the 2013 and 2015 Stock Plans, which violation also amounted to a breach of fiduciary duties under Delaware law.[37] Specifically, the Plaintiff argues that the Proxy Statement seeking stockholder approval of the SIPs did not adequately "(i) identify each class of persons who would be eligible to participate in the stock plan; (ii) indicate the approximate number of persons in each class; and (iii) state the basis of such participation," as required under Item 10(a) of the Exchange Act.[38]

Under the Plaintiff's theory, because the 2013 and 2015 SIPs did not receive an informed stockholder vote, the Plaintiff submits that "all stock-based awards that the [Board members] have issued to themselves, and to everyone else, after May 23,

---

[36] 17 C.F.R. § 240.14a-101.
[37] Compl. ¶¶ 35–36.
[38] *Id.* ¶ 35.

"2013" are void and asks that I cancel them.[39]  Moreover, the Plaintiff contends that in issuing awards under the invalid SIPs, the Defendants violated their fiduciary duties of loyalty and care.

### 2. Cash-Based Incentive Awards

From 2011 to 2016, Goldman made cash-based incentive awards to its named executive officers.[40]  The amount of these awards was "based on Goldman's return on equity and book value per share multiplied by the Target of the award over a performance period of time."[41]  Each award has an eight-year performance period and a maximum amount, which, along with the target, are set by the compensation committee.[42]  Goldman's 2015, 2016, and 2017 Proxy Statements represented that compensation, including equity-based awards, were intended to be tax deductible.[43]  They did not, however, specifically discuss the cash-based incentive awards.[44]  They did, however, reveal that the Board "may decide to pay non-deductible variable compensation."[45]  Ultimately, the cash-based incentive awards "were 'variable compensation,' up to a maximum of $100,276,510 in 2014 and $115,504,582 in 2015 and 2016," and as currently structured, they are not tax deductible.[46]

---

[39] *Id.* ¶ 36.
[40] *Id.* ¶ 37.
[41] *Id.*
[42] *Id.*
[43] *Id.* ¶ 39.
[44] *Id.* ¶ 40.
[45] *Id.*
[46] *Id.* ¶ 43.

The Plaintiff avers that because "there was no 'may decide' about it . . . the ambiguous statement to this effect in the 2015, 2016, and 2017 Proxy Statements was misleading" and constituted a breach of the duty of loyalty.[47]

*D. Procedural History*

This action was filed on May 9, 2017. In response to the Complaint, the Defendants filed a Motion to Dismiss, which was fully briefed as of November 30, 2017. Before Oral Argument occurred, however, the parties reached a settlement. One stockholder objected to the settlement, and I denied the settlement in an October 23, 2018 Letter Opinion. Thereafter, the parties proceeded to Oral Argument on the pending Motion to Dismiss. This Memorandum Opinion follows.

## II. ANALYSIS

The Plaintiff brings four claims, two derivative and two direct: a derivative claim for breach of fiduciary duty of loyalty based on excessive compensation of non-employee Directors; a direct claim against the Board for breach of the fiduciary duty of loyalty in connection with disclosures resulting in stockholder approval of the SIPs; a derivative claim against the Board for breach of the fiduciary duties of loyalty and care[48] in issuing invalid stock-based awards made under the "void" SIPs; and a direct claim against the Board for breach of the fiduciary duty of loyalty in

---

[47] *Id.* ¶¶ 44, 68.

[48] Goldman Directors are exculpated from liability for breaches of the duty of care, but the Plaintiff here seeks equitable relief, not simply damages. *See* Feb. 4, 2019 Oral Argument Tr., at 62:1–17.

connection with disclosures regarding the cash-based incentive awards to its named executive officers.[49] In accordance with Rule 23.1's requirements, the Plaintiff argues that demand on the Goldman Board would have been futile.[50] The Defendants do not contest demand futility.

The Defendants moved to dismiss all claims under Court of Chancery Rule 12(b)(6), for failure to state a claim. The Defendants also raised the threshold issue of standing, and argue that the Plaintiff does not have standing to challenge the 2013 SIP because she did not become a stockholder until 2014.

*A. Legal Standard*

When faced with a Motion to Dismiss under Rule 12(b)(6), I must accept the well-pled allegations of fact as true and draw all reasonable inferences in the plaintiff's favor, then determine whether those allegations "would entitle the plaintiff to relief under a reasonably conceivable set of circumstances . . . ."[51] In Delaware, "a complaint must plead enough facts to plausibly suggest that the plaintiff will ultimately be entitled to the relief she seeks. If a complaint fails to do that and instead asserts mere conclusions, a Rule 12(b)(6) motion to dismiss must be granted."[52]

---

[49] *See generally* Compl.
[50] *Id.* ¶¶ 46–50.
[51] *In re Alloy, Inc.*, 2011 WL 4863716, at *6 (Del. Ch. Oct. 13, 2011) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531 (Del. 2011).
[52] *Desimone v. Barrows*, 924 A.2d 908, 929 (Del. Ch. 2007).

12

*B. Excessive Compensation*

The Plaintiff alleges that the non-employee Directors' compensation is grossly excessive and, because the Directors set their own compensation, such excessive compensation constitutes a breach of the fiduciary duty of loyalty.[53]

1. The Standard of Review

Decisions of corporate directors are presumed in our law to have been made in a loyal and informed manner; absent a showing to the contrary, they are thus reviewed under the deferential business judgment standard. Conversely, directors' self-interested decisions are inherently likely to be disloyal; those decisions are subject to review under the onerous standard of entire fairness, and the burden to demonstrate fair price and process is on the directors, not the plaintiff.

Section 141(h) of the DGCL gives a corporation's board of directors the power to fix director compensation.[54] Where a challenge is raised to a director decision on director compensation, however, Section 141 is the beginning, not the end, of the inquiry. The DGCL provision means that the actions of the directors are not *ultra vires*, but it says nothing about whether those actions are consistent with fiduciary duties. For the reasons just stated, that matter is reviewed under entire fairness.

---

[53] Compl. ¶¶ 21, 52.
[54] 8 *Del. C.* § 141(h).

Nonetheless, in their Motion to Dismiss, the Defendants here contend that, under the terms of the SIPs approved by stockholders, entire fairness does not apply. Instead, per the Defendants, the burden is on the Plaintiff to show that the director compensation decisions were taken in bad faith.[55] That is because stockholders authorized the SIPs at issue, which included provisions that "no member of the Board . . . shall have any liability to any person . . . for any action taken or omitted to be taken or any determination made in good faith with respect to the [SIPs] or any Award."[56] Thus, any action taken by the Board under the SIPs—self-interested or otherwise—is, per the Defendants, reviewable only under a good faith standard. This, the Defendants argue, is dispositive; they note that the Plaintiff does not plead that the Defendants did not act in good faith. To the contrary, the Defendants argue that they exercised their good faith judgment in setting their own compensation, and that even though their compensation is higher than their peer companies' executive compensation, they are well worth it: higher compensation is warranted because Goldman Sach's directors are, well, *Goldman Sachs directors*.

The Defendants, to their credit, do not argue that the SIPs' language is a true ratification of the awards in question. They argue, however, that adoption of the language operates in the same way. If the awards at issue had been specifically

---

[55] The Director-Defs.' Opening Br. in Support of their Mot. to Dismiss the Compl. [hereinafter The Director-Defs.' Opening Br.], at 21.
[56] Miller Aff., Ex. 2, § 1.3.5; Miller Aff., Ex. 3, § 1.3.5.

14

placed before the stockholders for a vote, stockholder approval would cleanse any actionable breach of duty, based solely on overpayment.[57] Here, according to the Defendants, in light of the SIPs—which purport to absolve the Directors of liability for future breaches of duty absent bad faith—I should reach the same result: no damages for self-dealing transactions, even if unfair, unless the Plaintiff successfully pleads bad faith. I find to the contrary: under the facts here, stockholder approval of the SIPs does not set a standard for director self-dealing at anything less than the entire fairness standard.

The fiduciary limits on director behavior are a bedrock of our corporate law. Individuals structuring entities can, of course, avoid the strictures of fiduciary duties by choosing a form of entity other than the corporation. LLCs, MLPs, and other alternative entities may capture value by choosing to organize in favor of conflicted transactions with limited fiduciary constraints, and investors in those entities are (or should be) aware of the risks incumbent in the entity structure. Stockholders of corporations, on the other hand, are free to invest—and to take corporate votes— secure in the knowledge that those making decisions for them are cabined by

---

[57] *See In re Inv'rs Bancorp, Inc., S'holder Litig.*, 177 A.3d 1208, 1217–18 (Del. 2017) (discussing *Kerbs v. Cal. E. Airways, Inc.*, 90 A.2d 652, 655 (Del. 1952), which held that ratification cures self-interested directors' breaches of duty absent "a gift of corporate assets to themselves or [where] ultra vires, illegal, or fraudulent"); *see also id.* at 1226 ("Because the stockholders did not ratify the specific awards under the [compensation plan], the affirmative defense of ratification cannot be used to dismiss the complaint.").

15

fiduciary duties.[58]  A world in which corporate directors are limited only by the strictures of bad faith, would, as is implicit in the Defendants' argument itself, be very different indeed.

The duty to act in good faith is a subset of the duty of loyalty.  Bad faith involves acts of bad intent, or scienter.  These include "classic" bad faith, that is, action motivated by intent to harm the entity, as well as intentional and conscious disregard of duty.[59]  Thus, a breach of the duty of loyalty—a self-dealing transaction unfair to stockholders—cannot be redressed, in light of the Defendants' understanding of the SIPs' language, absent an *intent* to do wrong on the Defendants' part.  A good-faith, Stuart Smalley-like[60] belief, held by the directors, that they were good enough, smart enough, and doggone it, they were worth twice—or twenty times—the salary of their peers, would not be actionable.

In effect, the Defendants argue that in approving the SIPs, Goldman's stockholders waived the right to entire fairness review in cases of self-dealing transactions, absent bad faith.  For the reasons set out above, I am dubious that a majority of stockholders can waive the corporation's right to redress for *future and*

---

[58] *See, e.g.*, *Sample v. Morgan*, 914 A.2d 647, 663–64 (Del. Ch. 2007).
[59] *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64–66 (Del. 2006).
[60] *See, e.g.*, Daily Affirmations with Stuart Smalley, *Saturday Night Live* (NBC television broadcast Feb. 9, 1991) ("I'm good enough, I'm smart enough, and doggone it, people like me.").

*unknown* unfair self-dealing transactions.[61] That question is not before me, however, because the language of the SIPs is inadequate to support such a waiver.

Waiver as a defense requires that the waiving party has voluntarily, and intentionally, relinquished a known right.[62] A party has waived a right where she has knowledge of all material facts pertaining to the right and nonetheless intends to waive and to refrain from enforcing the right.[63] A party successfully asserting waiver must demonstrate three elements: 1) a right or requirement that 2) is known to the waiving party and 3) that "the waiving party [intends] to waive" the right.[64]

Here, I assume for purposes of this Motion to Dismiss, the waiver language was included as part of a series of broad SIPs. Those SIPs involve incentives to numerous employees and officers of Goldman. Many of the awards possible under each SIP, therefore, would *not* involve the Directors bringing their judgment to bear in light of their own interests. In other words, the bulk of the director discretion approved under the SIPs would not be self-dealing, and would be within the Defendants' business judgment. In such a context, receiving a majority of stockholder votes exculpating good-faith actions of the Director-Defendants is, in my mind, insufficient to demonstrate a knowing waiver of the right to redress for

---

[61] While the provision here is not precisely the provision in question in *Bancorp,* the rationale of that decision suggests that our courts would not enforce such an undefined waiver, as opposed to ratification of specific board action. *See Inv'rs Bancorp*, 177 A.3d at 1226.

[62] *Realty Growth Inv'rs v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982).

[63] *Bantum v. New Castle Cty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50 (Del. 2011).

[64] *Id.* (internal quotations omitted).

17

future unfair and self-dealing transactions on the part of the Directors.[65] To constitute waiver in these circumstance—to the extent such a thing is possible[66]—the Defendants would at minimum have to inform stockholders that the SIPs contemplated self-interested transactions subject to entire fairness, and provide that a vote in favor amounted to a waiver of the right to redress for such transactions, even if unfair, absent bad faith. I conclude that the stockholders have not caused Goldman to waive its right to entire fairness for self-interested director compensation. The standard of review is entire fairness.

### 2. The Motion to Dismiss for Failure to State a Claim

The case law on director compensation was previously something of a muddle. Fortunately, our Supreme Court's recent decision in *In re Investors Bancorp, Inc. Stockholder Litigation* clarified—and simplified—review of action taken by boards to set their own compensation.[67] In *Investors Bancorp*, a corporation's stockholders approved an equity incentive plan that allowed the directors to later award themselves compensation, on terms set at the discretion of the directors. Even though the stockholders approved the equity incentive plan, because the directors were able to later determine their own compensation under the

---

[65] Because of my decision here, I have not considered whether the "standard of review" language, associated with other provisions of the SIPs, can be considered "voluntary" for waiver purposes.
[66] *See generally Inv'rs Bancorp*, 177 A.3d 1208 (foreclosing the ratification defense where details of the directors' self-dealing compensation were not disclosed).
[67] *Id.* at 1208.

18

plan, the Supreme Court held that entire fairness was the applicable standard.[68] It reasoned that "[a]lthough authorized to do so by statute, when the board fixes its compensation, it is self-interested in the decision because the directors are deciding how much they should reward themselves for board service."[69]

According to the Complaint here, the SIPs set no specific limit on non-employee Director compensation, and permitted Directors to use their discretion to set that compensation. Here, in other words, the stockholders were not informed about the specifics of the compensation package itself; that is to say, as in *Investors Bancorp*, the stockholders did not "know precisely what they [were] approving."[70] The SIPs that the Goldman stockholders approved provided for stock awards to the Directors at their discretion—precisely the situation that the Supreme Court found implicated entire fairness in *Investors Bancorp*.

A finding that entire fairness, with its burden on the defendant, is the applicable standard usually precludes dismissal under Rule 12(b)(6). However, "[e]ven in a self-interested transaction in order to state a claim a shareholder must allege some facts that tend to show the transaction was not fair."[71] As the Defendants point out, the Complaint must meet a pleading burden: it must assert facts that, if

---

[68] *Id.* at 1212.

[69] *Id.* at 1217.

[70] *Id.* at 1222; *see also, generally*, *Lewis v. Vogelstein*, 699 A.3d 327 (Del. Ch. 1997); *Steiner v. Meyerson*, 1995 WL 441999 (Del. Ch. July 19, 1995).

[71] *Solomon v. Pathe Comm'ns Corp.*, 1995 WL 250374, at *5 (Del. Ch. Apr. 21, 1995).

true, make it reasonably conceivable that the transaction is not entirely fair to the corporation. [72]  Moreover, such a burden in the self-compensation area cannot be simply conclusory, in light of the power the DGCL confers on directors to self-compensate.  The Defendants contend that the Complaint fails to adequately plead that the Non-Employee Directors' compensation is unfair, and so the excessive compensation claim must be dismissed. [73]

The Plaintiff makes the following allegations: The Director-Defendants made nearly twice as much as their counterparts at the similarly situated companies identified as peers by Goldman itself.  And those peer directors attended more board meetings than did the Defendants—that is, the Goldman Directors awarded themselves more pay for the same or less work.  These peer companies have similar capitalization and exist in the same industry, and their performance is as good or better than Goldman's. [74]  The Complaint is, however, silent as to unfair process. Conversely, the Defendants point out that they set compensation with the help of an outside consultant, and that high director compensation has not negatively affected Goldman's performance; its returns on investment, according to the Defendants, are medial compared with peers in the industry.  It is also, I note, true that setting salaries

---

[72] *See Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 589 (Del. Ch. 2015).
[73] The Director-Defs.' Opening Br., at 32–39.
[74] Compl. ¶ 29.  According to the Plaintiff's Answering Brief, this constitutes "wretched excess," demonstrating, I suppose, that as with prose, when it comes to director compensation, wretched is in the eye of the beholder.  Pl.'s Br. in Opp'n to Defs.' Mots. to Dismiss [hereinafter Pl.'s Answering Br.], at 11.

above the peer average is not evidence of excessive compensation—if it were, half of all companies would be overcompensating their directors.

The question is, given the pleading above, has the Plaintiff met her burden here? I must accept all well-pleaded allegations as true and draw all inferences in favor of the non-moving party; dismissal is inappropriate unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[75]

Regarding excessive compensation, the Complaint is not, to my mind, particularly strong. I find, however, that the Plaintiff has met her low pleading burden regarding director compensation: to point to "some facts" implying lack of entire fairness, which will require a unified review of both process and price.[76] The Complaint does more than assert conclusory allegations. The Plaintiff pleads that the Board's average compensation is nearly twice[77] that of its peer companies' directors, and points to evidence of that difference. Moreover, as described above, the Plaintiff also alleges that Goldman's directors managed an entity no larger or more profitable than its peers, did less, and achieved no better results, in light of this

_____

[75] *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, 2016 WL301245, at *7 (Del. Ch. Jan. 25, 2016) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[76] *Solomon*, 1995 WL 250374, at *5.

[77] In fact, the Director-Defendants receive largely stock-based compensation—about 1.7 times the average peer salary. The Defendants point out that much of the stock is restricted, and is thus less valuable than its trading value. Feb. 4, 2019 Oral Argument Tr., at 22:1–6. The record is silent as to how peers are compensated.

near-double compensation. To my mind, this raises at least an inference of unfair transactions. Under entire fairness review, it is the Defendants' burden to rebut these allegations.

The Defendants argue that their compensation is well within the bounds reasonable to a company of Goldman's caliber, particularly considering the checks established on their own self-interest, such as employing a compensation consultant and accepting that consultant's recommendation.[78] They point out that the Goldman Directors have extensive duties outside the "official Board meetings" represented in the Plaintiff's analysis, and they argue that compensation less-than-double its peers does not implicate lack of fairness to the corporation. This inquiry, going forward, will be factual.[79] The Defendants' argument may ultimately prove persuasive. The matter is before me on a Motion to Dismiss, with the inferences going to the Plaintiff; the Defendants' arguments must be reviewed under a more developed record. The Defendants' Motion to Dismiss is denied as to the Plaintiff's derivative compensation claim.

---

[78] *See* Feb. 4, 2019 Oral Argument Tr., at 8:5–7.

[79] The Defendants imply that, absent dismissal, this case will encourage a massive filing of strike suits in the director compensation field. The Director-Defs.' Opening Br., at 20 (citing *Solomon*, 1995 WL 250374, at *4). I find this specter less than concerning, for at least two reasons. In most compensation cases, the amount at issue will not be large, and while surviving a motion to dismiss does give a plaintiff significant leverage, that plaintiff will incur significant expense developing a record which may well lead to a determination that the compensation was fair. Second, the Supreme Court in *Bancorp* has made clear the path by which directors can obtain ratification, which will eliminate the potential for liability for such directors who obtain ratification going forward.

*C. Disclosures*

The Plaintiff makes disclosure-based claims (both derivative and direct) regarding stockholder approval of the SIPs. The Plaintiff alleges, in a direct claim, that the Directors did not provide stockholders with material information, as required by the SIPs, Treasury Regulation § 1.162-27(e)(4)(v), and the Directors' duty of disclosure, concerning the SIPs that were approved in 2013 and 2015.[80] In her answering brief to the Defendants' Motion to Dismiss, however, the Plaintiff acknowledged that much of the "omitted information"[81] was, in fact, discussed in Goldman's proxy statements, but she argues that the information was "buried" and should be considered as though omitted.[82] Because of this, she submits, the SIPs never received an informed stockholder vote, which amounts to a breach of the duty of loyalty (including the duty of candor), and the SIPs are void *ab initio*.[83] It follows, alleges the Plaintiff in a derivative claim, that by later issuing awards under the invalid SIPs, the Board members breached their duties of loyalty and care.[84]

Similarly, the Plaintiff alleges (also derivatively) that the Board members breached their fiduciary duty of loyalty by making "partial, vague, and misleading

---

[80] Compl. ¶ 58.
[81] *See id.* ¶¶ 34, 59.
[82] Pl.'s Answering Br., at 33.
[83] Compl. ¶ 59.
[84] *Id.* ¶¶ 62–66.

23

disclosures and omissions concerning the tax deductibility of the cash-based incentive awards."[85]

In their Motion to Dismiss, the Defendants first argue that the Plaintiff does not have standing to challenge the 2013 SIP. The Complaint alleges that the Plaintiff has been a stockholder since June 12, 2014; therefore, she does not have standing to challenge the SIP approval, which occurred on May 23, 2013.[86] In any event, the Defendants submit, the disclosure claims are untimely and should accordingly be dismissed.[87] The Defendants also argue that no breach of duty inheres in the disclosures relative to the incentive awards. I examine each argument in turn, below.

1. The SIP Claims

a. The 2013 SIP

Standing is a threshold issue in any litigation. In a general sense, "the concept of 'standing' . . . refers to the right of the party to invoke the jurisdiction of a court to enforce a claim or redress a grievance."[88] To establish standing,

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to

---

[85] *Id.* ¶ 69.
[86] The Director-Defs.' Opening Br., at 41.
[87] *Id.* at 42–43.
[88] *El Paso Pipeline GP Co., LLC v. Brinckerhoff*, 152 A.3d 1248, 1256 (Del. 2016) (quotation omitted).

merely speculative, that the injury will be redressed by a favorable decision.[89]

Rule 23.1 contains rigorous pleading requirements, including those that relate to standing. Choses in action, as this Court has noted many times, are assets that, if they belong to a corporate entity, are under the control of that entity and its directors, not the company's stockholders or members.[90] An exception exists where the company (due, for instance, to director conflicts) will not, or cannot, deploy the asset in the corporate interest. In that limited subset of cases, stockholders may have standing to bring the action derivatively.[91] To do so, a stockholder's complaint must "allege that the plaintiff was a stockholder or member at the time of the transaction of which the plaintiff complains . . . ."[92]

Here, the Plaintiff asserts a claim against Board members for breach of fiduciary duty of loyalty in connection with disclosures seeking stockholder approval of the 2013 SIP and awards made pursuant to that "void" SIP. The Complaint, however, only alleges that the Plaintiff "has been a common stockholder continuously since June 12, 2014."[93] There is no allegation that the Plaintiff had any relationship, contractual or otherwise, with the Board when the 2013 SIP was

---

[89] *Dover Hist. Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003).
[90] *See, e.g., Park Emps.' & Ret. Bd. Emps.' Annuity and Benefit Fund of Chi. v. Smith*, 2016 WL 3223395, at *1 (Del. Ch. May 31, 2016).
[91] *See generally Rales v. Blasband*, 634 A.2d 927 (Del. 1993).
[92] Ct. Chan. R. 23.1(a).
[93] Compl. ¶ 3.

approved. Accordingly, I find that the Plaintiff lacks standing to challenge the 2013 SIP, or awards made thereunder. In any case, the Plaintiff's claim is untimely, as explained below.

### b. The 2015 SIP

As with the 2013 SIP, the Plaintiff asserts a derivative claim and a direct, individual claim against the Board for breach of fiduciary duty of loyalty in connection with stockholder approval of the 2015 SIP. Per the Plaintiff, when asking for stockholder approval of the 2015 SIP, the Directors did not provide stockholders with all relevant, material information, as required by the SIP itself, by Treasury Regulation § 1.162-27(e)(4)(v), and by the Directors' "duty of disclosure."[94] The Plaintiff posits that because the stockholders were not provided with all relevant, material information, there was no informed stockholder vote, and the SIPs are void; under that logic, the Board violated the fiduciary duties of loyalty and care by issuing invalid stock-based awards under the void SIPs. Accordingly, all awards pursuant to the SIPs are themselves void, and the Plaintiff seeks rescission and declaratory relief.[95]

---

[94] *Id.* ¶ 58.

[95] At oral argument, the Plaintiff suggested that I could require Goldman to "re-do" the 2013 and 2015 votes, or assess monetary damages (although counsel could not suggest a metric for the latter). Feb. 4, 2019 Oral Argument Tr., at 58:15–6:9.

Regarding the basis for these disclosure violations, the Plaintiff points to Treasury Regulation § 1.162-27(e)(4), which requires disclosure and stockholder approval of "[t]he material terms of the performance goal under which the compensation is to be paid," as determined under the same standards as the Exchange Act.[96] In turn, the Exchange Act provides:

> Item 10. Compensation Plans.
> If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>     (a)    Plans subject to security holder action.
>     (1)    Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.[97]

Per the Plaintiff, the Proxy Statement seeking stockholder approval of the SIP did not "(i) identify each class of persons who would be eligible to participate in the SIP; (ii) indicate the approximate number of persons in each class; and (iii) state the basis of such participation," as required under Item 10(a) of the Exchange Act—or at least, that it did not do so with sufficient clarity.[98]

In their Motion to Dismiss, the Defendants argue that the information at issue was, in fact, disclosed, and that at any rate, the Plaintiff's challenges come too late.[99]

---

[96] 26 C.F.R. § 1.162-24(e)(4); *see also* Pl.'s Answering Br., at 31.
[97] 17 C.F.R. § 240.14a-101.
[98] Compl. ¶ 35.
[99] Director-Defs.' Opening Br., at 42–43.

This Court requires a Plaintiff who has been harmed to seek resolution in a timely fashion; equity aids the vigilant, not those who slumber on their rights. Where there are alleged disclosure deficiencies, "the preferred time to address such claims [is before a stockholder vote] in order to afford remedial relief appropriate for genuine informational deficiencies."[100] Moreover, the equitable doctrine of laches can bar claims by a plaintiff who "unreasonably delayed in bringing his claims after he became aware of them."[101] The party asserting a laches defense must show that the plaintiff knew of the invasion of his rights, that he unreasonably delayed in bringing suit to vindicate those rights, and resulting prejudice to the defendant.[102] The first prong requires the defendant to demonstrate "that the plaintiff was on inquiry notice, if not actual notice, of his claims."[103] In general, an analysis of laches is fact-intensive; for that reason, it is not typically applied at the motion to dismiss phase.[104] Nevertheless, a Court may dismiss a case under the laches doctrine when "it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it."[105] Laches is apt in disclosure cases

---

[100] *In re Solera Hldgs., Inc. S'holder Litig.*, 2017 WL 57839, at *8 (Del. Ch. Jan. 5, 2017).

[101] *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *7 (Del. Ch. Apr. 25, 2019).

[102] *See Akrout v. Jarkoy*, 2018 WL 3361401, at *8 (Del. Ch. July 10, 2018).

[103] *Forman*, 2019 WL 1810947, at *7.

[104] *See Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009).

[105] *Bean v. Fursa Capital Partners, LP*, 2013 WL 755792, at *6 (Del. Ch. Feb. 28, 2013) (citation omitted).

where the plaintiff eschews pre-vote relief, then, significantly after the fact, seeks rescission.[106]

The Plaintiff here argues that the SIP omitted material information; however, it is apparent that to the extent there is a deficiency, such deficiency would be obvious from the face of the Proxy Statement. The Proxy Statement, in fact, refers specifically to the Treasury Regulation in light of which, per the Plaintiff, it is deficient. Nonetheless, the Plaintiff did not bring suit until 2017, two years after the 2015 SIP was approved. The Plaintiff did not object to the SIP in 2015, and *for two years after*, she continued to accept the benefits of Goldman's management. She now seeks to unwind incentive payments made to employees under the SIP, the benefits of which she has already reaped. This remedy would be damaging to third parties and cause harm to Goldman's relationship with its employees. This harm accrued while the Plaintiff slumbered on her rights.[107] To now argue that the 2015 SIP is void *ab initio*, and must be undone, violates fundamental principles of laches,

---

[106] *Cf. Nguyen v. Barrett*, 2016 WL 5404095, at *7 (Del. Ch. Sept. 28, 2016) ("The preferred method for vindicating truly material disclosure claims is to bring them pre-close, at a time when the Court can insure an informed vote."); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 2012 WL 3201139, at *15 (Del. Ch. Aug. 7, 2012) ("[A] laches bar may arise earlier than the statutory cut-off when a plaintiff seeks equitable remedies such as . . . rescission . . . . Relief of this kind will only be obtained if the plaintiff acts with dispatch, and will normally be foreclosed to a plaintiff who sits on his hands until near the end of the analogous limitations period." (quotations omitted)).

[107] The Plaintiff argues that the existence of other litigation, dismissed on standing grounds, implicates the savings statute. Pl.'s Answering Br., at 26–28. While the saving statute may toll the statute of limitations, it does not, to my mind, affect my laches analysis here.

as well as this Court's preference for disclosure claims to be brought before the stockholder vote. Accordingly, the Plaintiff is barred from bringing this claim. As a result of my decision here, I need not address the Defendants' contention that the disclosures, which the Plaintiff now acknowledges were made but were "buried" in the Proxy Statement, were in fact adequate.[108]

### 2. Tax Deductibility of Executive Compensation

In a direct claim, the Plaintiff alleges that the Director-Defendants, individually, breached their fiduciary duty of loyalty by making "partial, vague, and misleading disclosures and omissions concerning the tax deductibility of the cash-based incentive awards."[109] Each year Goldman has made cash-based incentive awards to its named executive officers.[110] The Compensation Discussion and Analysis section of Goldman's 2015, 2016, and 2017 Proxy Statements contained a subsection titled "Section 162(m)," which detailed tax implications for executive compensation.[111] The Proxy Statements informed stockholders that compensation (under stockholder-approved plans) was intended to be tax deductible, but did not disclose whether all cash-based incentive awards would, in fact, be tax deductible.[112]

---

[108] *See Zalmanoff v. Hardy*, 2018 WL 5994762 (Del. Ch. Nov. 13, 2018), *aff'd* 2019 WL 2151662 (Del. 2019) (finding no violation of fiduciary duty where a proxy statement with alleged omissions was mailed alongside a Form 10-K, which contained the information).
[109] Compl. ¶ 69.
[110] *Id.* ¶ 37.
[111] *Id.* ¶ 39.
[112] Miller Aff., Ex. 4, at 50.

Specifically, the proxy statements included language providing that the company "may decide to pay non-deductible variable compensation."[113]   The Plaintiff contends that this violates the fiduciary duty of candor because it is a partial disclosure.  Per the Plaintiff, "[t]he Directors have awarded enormous amounts of 'variable compensation,' which are not tax-deductible.  There was no 'may decide' about it, and therefore, the ambiguous statement to this effect in the 2015, 2016, and 2017 Proxy Statements was misleading and failed to fully and accurately disclose the Directors' actions and intent."[114]

In their Motion to Dismiss, the Defendants argue, *inter alia*, that that these awards have not yet been made—rather, the awards have been announced but no payments have been distributed—which renders any argument about their tax-deductibility premature, especially considering that there are ways in which this compensation may be tax-deductible, when it is ultimately paid.  In sum, the Defendants aver that the challenged disclosure was not false or misleading.[115]

I find that the Plaintiff has failed to state a claim on which relief can be granted because the challenged disclosure was not materially false or misleading.  The Proxy Statement informed Goldman's stockholders that the Directors intended compensation, generally, to be deductible, but that they "may decide to pay non-

---

[113] Compl. ¶ 40.
[114] *Id.* ¶ 44.
[115] The Director-Defs.' Opening Br., at 53–54.

deductible variable compensation."[116]   This disclosed to the stockholders the possibility that Goldman would pay non-deductible variable compensation; the stockholders were on notice of such.[117]  Subsequently, the Board issued such awards. This is, simply put, in this context not materially misleading.  Accordingly, this claim is dismissed.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is granted in part and denied in part.  An Order is attached.

---

[116] Compl. ¶ 40.

[117] The stockholders were not asked to vote on these cash-based incentive awards, but were asked to re-elect the Directors making the disclosures.  *See* Feb. 4, 2019 Oral Argument Tr., at 38:5–14.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SHIVA STEIN, derivatively on behalf of The Goldman Sachs Group, Inc., and individually as a Stockholder of The Goldman Sachs Group, Inc., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2017-0354-SG |
| LLOYD C. BLANKFEIN, M. MICHELE BURNS, GARY D. COHN, MARK A. FLAHERTY, WILLIAM W. GEORGE, JAMES A. JOHNSON, ELLEN J. KULLMAN, LAKSHMI N. MITTAL, ADEBAYO O. OGUNLESI, PETER OPPENHEIMER, DEBORA L. SPAR, MARK E. TUCKER, DAVID A. VINIAR, MARK O. WINKELMAN, and THE GOLDMAN SACHS GROUP, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 31st day of May, 2019,

The Court having considered the Defendants' Motion to Dismiss, and for the reasons set forth in the Memorandum Opinion dated May 31, 2019, IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED as to Counts II, III, and IV, and DENIED as to Count I.

/s/ Sam Glasscock III
Vice Chancellor