# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
INSURANCE COVERAGE OFFICE, )
)
    Plaintiff, )
)   C.A. No. N19C-10-260 MMJ
    v. )
)
DIONA PERKINS-JOHNSON, MARY )
R. EVANS, and THE TRAVELERS )
HOME AND MARINE INSURANCE )
COMPANY, )
)
    Defendants. )

Submitted: May 20, 2021

Decided: August 19, 2021

On Plaintiff State of Delaware Insurance Coverage Office's
Motion for Summary Judgment

**DENIED**

On Defendant Mary R. Evan's Cross Motion for Summary Judgment

**GRANTED**

On Defendant The Travelers Home and Marine Insurance Company's
Cross Motion for Summary Judgment

**GRANTED**

# OPINION

Allison J. McCowan, Esq. (Argued), State of Delaware Department of Justice, Wilmington, Delaware, *Attorneys for Plaintiff State of Delaware Insurance Coverage Office.\*

Benjamin C. Wetzel, III, Esq. (Argued), Natalie M. Ippolito, Esq., Wetzel & Associates, P.A., Wilmington, Delaware, *Attorneys for Defendant Mary R. Evans*

Kenneth M. Doss, Esq. (Argued), Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, *Attorneys for Defendant The Travelers Home and Marine Insurance Company*

**JOHNSTON, J.**

2

# FACTUAL AND PROCEDURAL CONTEXT

## *Parties*

This declaratory judgement action involves an insurance coverage dispute. Plaintiff State of Delaware Insurance Coverage Office ("the State") is a state agency. Defendant Mary R. Evans ("Evans") is a private citizen of the State of Delaware. Defendant The Travelers Home and Marine Insurance Company ("Travelers") is a foreign insurance company. Defendant Diona Perkins-Johnson ("Perkins-Johnson") is a private citizen of the State of Delaware and a State of Delaware employee.

## *The Accident*

In October 2016, Evans was a student driver enrolled in a high school driver's education course. Driving lessons utilized vehicles provided by the high school and owned by the State. These State-owned vehicles were outfitted with brake pedals for both the student driver and for the driving instructor, who was responsible for the unlicensed student driver's safety. On October 28, 2016, Evans was operating a vehicle under the supervision of driving instructor, Perkins-Johnson. Evans and Perkins-Johnson were involved in an accident with another car (the "Accident"). At the time of the Accident, Perkins-Johnson was employed by the State as a driver's education instructor for the Red Clay School District. Perkins-Johnson was injured in the Accident.

3

### *Insurance Policies*

Delaware law mandates that the State procure insurance for vehicles owned by the State. Vehicles owned by the State are covered by a Pennsylvania Manufacturers Association Insurance Group policy ("PMA Policy"). The State-owned driver's education vehicle operated by Evans at the time of the Accident was covered under the PMA Policy. Evans was "an Insured" under the PMA Policy.

Travelers issued an automobile insurance policy to Evans' parents (the "Travelers Policy"). The Travelers Policy was in effect at the time of the Accident and provided for liability coverage. Evans was an additional insured on the Travelers Policy.

### *Perkins-Johnson Receives Workers' Compensation*

Perkins-Johnson claimed personal injuries as a result of the Accident. Perkins-Johnson sought and recovered workers' compensation benefits from the State of Delaware, Perkins-Johnson's employer.

Perkins-Johnson also brought a separate claim for Personal Injury Protection ("PIP") benefits under 21 *Del. C.* § 2118 in the form of medical expenses. The PIP benefits were paid under the PMA Policy.

4

### *The Underlying Litigation*

On September 26, 2018, Perkins-Johnson filed a lawsuit seeking tort damages for personal injuries arising out of Evans' alleged negligence. Evans was the sole defendant.

Defendants have stated that following the Accident, Evans' father ("Mr. Evans") was informed by an official at Evans' school that the school's insurance would handle any claims resulting from the Accident. The State provided Evans with a defense to the underlying litigation under the State's PMA Policy. The State filed an answer on behalf of Evans, asserting defenses to the negligence and damages claims. The State-provided defense counsel responses to written discovery, defended Evans' deposition, and took the deposition of Perkins-Johnson. Evans' defense was not provided under any reservation of rights on the part of the State. The State did not specifically reserve the right to deny liability coverage to Evans on the basis of any PMA Policy exclusions.

Defendants further allege that the school official also informed Mr. Evans that he did not need to put his personal insurance carrier, Travelers, on notice of the underlying tort litigation against Evans because the State's insurance policy would provide Evans with a defense.

At some point, the State became aware that Evans was an additional insured on the Travelers Policy at the time of the Accident. The State subsequently took the

position that Evans was not insured under the State's policy. On June 28, 2019, the State tendered Evans' defense and indemnification in the underlying litigation to Travelers.

By letter dated July 19, 2019, Travelers reserved its right to deny a defense and indemnity to Evans under the Travelers Policy. By letter dated August 26, 2019, Travelers denied the tender. The denial of primary coverage was on the grounds that Evans was insured as a permissive user under the State's PMA Policy.

On October 28, 2019, Evans received the State's denial of coverage letter. The letter cited Exclusions 2, 3, and 5 of the PMA Policy as the State's basis for denying coverage.

### Coverage Litigation

On October 30, 2019, the State filed this declaratory judgment action. The tort case was stayed. Defendants Evans and Travelers asserted counterclaims. The State and Evans and Travelers have cross-moved for summary judgment.

The State seeks the Court's declaration that the State does not owe Evans a defense or indemnification in the underlying tort litigation brought against Evans by Perkins-Johnson. The State also seeks the Court's determination that Travelers must provide Evans with a defense and indemnity on a primary and non-contributory basis.

6

Defendants seek the Court's declaration that the State is obligated to continue to provide Evans with a defense against Perkins-Johnson's tort claims in the underlying litigation, and that the State is obligated to provide Evans with liability coverage under the State's PMA Policy.

## SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[1] All facts are viewed in a light most favorable to the non-moving party.[2] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[3] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[4] If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[5] Further, under Delaware law, where the parties' differences center around the meaning of an applicable

---

[1] Super. Ct. Civ. R. 56(c).
[2] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).
[3] Super. Ct. Civ. R. 56(c).
[4] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

7

insurance policy, a motion for summary judgment is appropriate.[6] Where there are cross motions for summary judgment, "the parties implicitly concede the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions."[7]

## ANALYSIS

### The State's Questions

1.    Does [sic] the terms of the Policy exclude Perkins-Johnson's recovery in this matter?

2.    Is Perkins-Johnson's exclusive remedy paid by the State of Delaware the benefits she received under the Delaware Workers' Compensation Act?

3.    Is Travelers a secondary insurance company available to Evans, and if so, responsible to defend and indemnify Evans against Perkins-Johnson's claims?

### Travelers' Questions

1.    Is there any dispute that Evans was an insured for liability coverage under the State's policy with PMA?

2.    Are Perkins-Johnson's tort negligence claims against Evans barred by the exclusivity provision of Delaware's worker's compensation statute?

3.    Must the exclusions upon which the State relies in disclaiming coverage to Evans be construed strictly against the State and PMA under Delaware law?

---

[6] *See Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del. 1997) ("Under Delaware law, the interpretation of contract language is treated as a question of law. The scope of an insurance policy's coverage obligation is prescribed by the language of the policy").

[7] *Browning-Ferris, Inc. v. Rockford Enters., Inc.*, 642 A.2d 820, 823 (Del. Super. 1993).

4.      Do the exclusions from liability coverage which the State has cited apply to negate coverage for Evans under the PMA policy for Perkins-Johnson's tort claim against Evans?

5.      Has the State has waived its ability to disclaim coverage to Evans by its actions in the underlying tort suit, and/or should the State be estopped from changing that position as Evans has detrimentally relied upon the State's provision defense and indemnity to her?

### Evans' Questions

1.      Whether Defendant Evans is entitled to primary coverage in the underlying litigation under the State's Business Automobile Insurance Policy as a permissive user of the State owned vehicle?

2.      Whether the doctrine of Workers' Compensation Exclusivity is applicable here where Evans, the alleged tortfeasor, was not Perkins-Johnson's employer?

### Insurance Contract Interpretation

In Delaware, contract interpretation is a determination of law.[8] "Delaware adheres to the 'objective' theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[9] Priority is given to the intentions of the parties as "reflected in the four corners of the agreement."[10]

An interpretation that gives effect to all the terms of an insurance policy is preferable to any interpretation that results in a conclusion that some terms are

---

[8] *CNH Am., LLC v. Am. Cas. Co. of Reading, Pennsylvania*, 2014 WL 626030, at *4 (Del. Super.).
[9] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).
[10] *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014).

9

uselessly repetitive.[11]  Specific language in a contract controls over general language.  Where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general."[12]

Where the language of an insurance policy is "clear and unambiguous," the parties' intent is ascertained by giving effect to the plain meaning of the policy's terms and provisions, without resort to extrinsic evidence.[13]  An insurance policy is ambiguous only when the provisions in controversy "are reasonably or fairly susceptible to two or more different interpretations."[14]  An insurance policy is not ambiguous merely because the parties disagree on the proper construction.[15]  Ambiguous insurance policy language is construed in the insured's favor.  Under the doctrine of *contra preferentum*, the language of an insurance policy must be construed against the policy drafter.[16]

Coverage language is interpreted broadly to protect the insured's objectively reasonable expectations.  Exclusionary clauses are strictly and narrowly construed.[17]

---

[11] *Khan v. Delaware State Univ.*, 2017 WL 815257, at *4 (Del. Super.).
[12] *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005); *see also Mutual Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904).
[13] *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007); *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 399 (Del. 1978) (explaining "a party will be bound by the plain meaning of clear and ambiguous language because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented").
[14] *Weiner v. Selective Way Ins. Co*, 793 A.2d 434, 440 (Del. Super. 2002).
[15] *O'Brian v. Progressive Northern Ins.* Co., 785 A.2d 281, 288 (Del. 2001).
[16] *WSFS Fin. Corp. v. Great Am. Ins. Co.*, 2019 WL 2323839, at *4(Del. Super.).
[17] *Lukk v. State Farm Mut. Automobile Ins. Co.*, 2014 WL 189100, at *4

10

The insurer bears the burden of proving that a loss or claim is excluded under the policy.[18] Nevertheless, exclusionary language is enforced where it is found to be "specific," "plain," "conspicuous," and "not contrary to public policy."[19] In general, Delaware law prohibits broad, categorical exclusions that degrade coverage such that it falls below statutory minimums or excludes an injured person's claim because of affiliations to the policyholder who injured him or her.[20]

### Statutory State Insurance Requirements

Section 2118 of Title 21 of the Delaware Code provides that the State must maintain minimum insurance coverage for State-owned vehicles. "The plain meaning of [21 *Del. C.* §§ 2118 and 2902] is clear and unambiguous: motor vehicles registered in Delaware must be insured against legal liability up to the stated limits for the benefit of the named insured and any person operating the vehicle with the permission of the insured....Significantly...neither statute restricts liability coverage to certain claims based upon the relationship of the plaintiff to the defendant. Rather, both provisions are drafted in broad language which provides for liability coverage

---

(Del. Super.) (holding that, in general, Delaware law prohibits broad, categorical exclusions that degrade coverage such that it falls below statutory minimums or excludes an injured person's claim because of his/her affiliations to the policyholder who injured him/her.).

[18] *See Miller v. Westport Ins. Corp.*, 200 P.3d 419, 426 (Kan. 2009); *see also Natl. Union Fire Ins. Co. Pittsburgh, P.A. v. Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690, at *8 (Del. Super. Jan. 16, 1992), *aff'd sub nom, Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192 (Del. 1992).

[19] *Id.*

[20] *Lukk*, 2014 WL 189100, at *4.

11

for *all* claims up to the stated limits, regardless of the identity of the plaintiff."[21] This broad coverage is consistent with the legislative intent of these provisions to provide a certain amount of indemnity from liability for permissive vehicle users.[22]

The Court finds that the State must, and did, maintain liability insurance coverage for Evans against the tort claims brought by Perkins-Johnson in the underlying litigation. Evans was a permissive user of the State-owned vehicle covered under the State's PMA Policy. Therefore, Evans is an "Insured."

The Court finds that the obligation to indemnify and defend Evans does not cease to exist simply because the plaintiff in the underlying action, Perkins-Johnson, is a State employee. The fact Perkins-Johnson is a State employee must be balanced against the requirement of Delaware law placing primary liability coverage on the vehicle owner, as well as the intent of Delaware law to broadly cover all claims and provide some level of indemnity for permissive vehicle users, like Evans.

### *PMA Policy Exclusions*

The State relies on three PMA Policy exclusions as a basis for denying Evans a defense and indemnification: Exclusion 2, Exclusion 3, and Exclusion 5.

### Exclusion 3

Exclusion 3 provides:

---

[21] *State Farm Mutual Auto Ins. Co. v. Wagamon*, 541 A.2d 557, 560 (Del. 1988) (emphasis in original).
[22] *See id.*

12

This insurance does not apply to:...

3. Any obligation of the Insured to indemnify another for damages resulting from bodily injury to the Insured's employee.

The Court finds that Exclusion 3 does not apply. There is no obligation for Evans to indemnify (by contract or otherwise) the State or any other party against claims that might be made against Evans for injuries sustained by others during Evans' driving lessons. Therefore, Exclusion 3 does not exclude Evans from coverage under the State's PMA Policy.

## Exclusion 5

Exclusion 5 provides:

This insurance does not apply to:...

5. Bodily injury to any employee of the Insured arising out of and in the course of his or her employment by the Insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits.

The Court finds that Exclusion 5 does not apply. Perkins-Johnson is not an employee of Evans. Perkins-Johnson was an employee of the State at the time of the Accident. Evans is the Insured for purposes of the underlying tort litigation. Therefore, Exclusion 5 is inapplicable to deny Evans liability coverage under the PMA Policy.

## Exclusion 2 and Severability

Exclusion 2 provides:

This insurance does not apply to:...

13

2. Any obligation for which the Insured or his or her insurer may be held liable under any workers' compensation or disability benefits law or under any similar law.

The State's PMA Policy is a single policy that covers several types of losses. The PMA Policy covers losses sustained in connection with uninsured motorists, property damage, Personal Injury Protection ("PIP"), workers' compensation, and personal injury liability.

Defendants rely upon Part I, Subpart F of the PMA Policy regarding severability.

> F. "Insured" means any person or organization qualifying as an Insured in the WHO IS AN INSURED section of the applicable insurance. *Except with respect to our limit of liability*, the insurance afforded applies separately to *each Insured* who is seeking coverage or against whom a claim is made or a suit is brought. (emphasis added).

Defendants assert that the severability clause permits each Insured under the PMA Policy to be evaluated separately under each coverage type when determining applicability of the PMA Policy exclusions.

The State argues against severability of the different types of losses covered under the PMA Policy. The State contends that where the State is an Insured for one type of loss covered under the PMA Policy (such as workers' compensation), the State is also an Insured against liability for all types of losses covered under the PMA Policy—including personal injury liability coverage. The State contends that Defendants' severability reasoning is contrary to public policy, and that this is an

14

issue of first impression. The State further asserts that the severability language is ambiguous.

Defendants counter that to the extent there is any ambiguity in the PMA Policy, it should be construed against the State and in favor of broad coverage.

The precise narrow issue – whether tort damages are available to an employee who sought workers' compensation benefits from their State employer, as well as tort recovery from a third-party tortfeasor, who is not an agent of the State but nonetheless an insured under the State's liability insurance policy as a permissive user of State property - is a matter of first impression in Delaware.

Defendants rely on certain decisions reached by the Wyoming and Pennsylvania Supreme Courts, for the proposition the severability of insurance clause provides coverage to a permissive user as an Insured, while continuing to prevent direct tort suits against the State.

In *Barnette v. Hartford Insurance Group*,[23] a corporation's executive officer made a claim against the corporation's automobile liability insurer. The insurer denied coverage to the executive officer on the grounds that he was a co-employee of the original tort plaintiff. The *Barnette* Court found:

> [T]he obligations of the insurer to the named insured and the additional insured should be treated separately and the exclusion provision treated as if a separate policy had been issued to the person invoking its coverage, with the result that for purposes of the exclusion provision,

---

[23] 653 P.2d 1375 (Wyo. 1982).

15

an injured person would not be considered within the employee exclusion unless he was an employee of the insured person seeking protection under the policy.[24]

In *Mutual Benefit Insurance Company v. Politsopoulos*,[25] the Pennsylvania Supreme Court held: "If the exclusion is written to apply to an employee of the insured, as opposed to any insured,...the exclusion should not apply to a claim against an insured entity that is not the employer."[26]

The Court finds that there can be multiple Insureds under the State's PMA Policy. An Insured under one section of the PMA Policy may be different under another section of the PMA Policy. For example, the State is the named Insured under Part IA of the PMA Policy.[27] Evans is an Insured under Part IV of the liability insurance section, Subsection D2 because she was a permissive user.[28] The State is an Insured for the workers' compensation claims.

---

[24] *Id.* at 1382 (quoting 48 A.L.R.3d 13, 97, Automobile insurance—Insured's Employee, § 29 "Effect of 'severability of interests' clause").

[25] 115 A. 3d 844 (Pa. 2015).

[26] *Id.* At 853 (quoting Windt, 3 Insurance Claims and Disputes § 11:14).

[27] Part I of the PMA Policy lays out the definition of "the named Insured" as follows:

> A. "You" and "your" mean the person or organization shown as the named Insured in ITEM ONE of the declarations.

[28] PART IV-LIABILITY INSURANCE of the PMA Policy defines categories of insureds for liability coverage as follows:

> D. WHO IS INSURED....
> 2. Anyone else is an Insured while using with your permission a covered auto you own. . .

Part IV of the PMA Policy provides for liability insurance as follows:

> A. WE WILL PAY.

16

Exclusion 2 must be interpreted in the context of the PMA Policy as a whole. The Court construes the severability clause to apply to *who* is insured, as opposed to the type of coverage. Both the State and Evans qualify as "an Insured" under the State's PMA Policy. The State is "an Insured" for workers' compensation claims. Evans is "an Insured" for liability coverage because Evans was a permissive user of the State's vehicle at the time of the Accident.

Under PMA Policy Part 1A, Evans is not simply "***an*** Insured" but essentially "***the*** insured." Perkins-Johnson brought tort claims solely against Evans, who has liability coverage under the State's PMA Policy as a permissive user of a covered State-owned vehicle. Evans does not have workers' compensation coverage under the State's PMA Policy. The State is not a named defendant in the underlying lawsuit.

The Court finds that the exclusions at issue in this case do not apply if the claimant is an employee of one Insured (the State) but is suing a different Insured (Evans), who does not employ the claimant. Evans' coverage as an Insured under the liability portion of the PMA policy is evaluated separately from coverage for any

---

1. We will pay all sums the Insured legally must pay as damages because of bodily injury or property damage to which this Insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
2. We have the right and duty to defend any suit asking for these damages . . . .

other Insured. Under each of the exclusions at issue in these motions, the Insured is Evans.

Liability insurance covers all sums Evans must pay because of bodily injury involving the use of the State's vehicle. Perkins-Johnson did not: (1) bring workers' compensation claims against Evans; or (2) name the State as a defendant in the underlying tort litigation. Therefore, Exclusion 2 is not applicable here to exclude Evans from liability coverage.

### Workers' Compensation Exclusivity

The PMA Policy exclusions relied upon by the State in denying liability coverage are based on Delaware's doctrine of workers' compensation exclusivity. It is undisputed that the State of Delaware was Perkins-Johnson's employer at the time of the Accident. The State argues that because Perkins-Johnson already received workers' compensation benefits from the State, Perkins-Johnson's claims against Evans in the underlying tort litigation are statutorily barred under 19 *Del. C.* § 2304 of Delaware's Workers' Compensation Act.[29] Thus, the State contends, Perkins-Johnson is not entitled to recover under the PMA Policy because Perkins-

---

[29] Delaware's workers' compensation statute, 19 *Del. C.* § 2304, provides:

> Except as expressly excluded in this chapter *and except as to uninsured motorist benefits, underinsured motorist benefits, and personal injury protection benefits,* every employer and employee, adult and minor, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies. (emphasis added).

Johnson's exclusive remedy against the State is the amount received as workers' compensation. Finally, the State asserts a public policy argument grounded in its concern over perceived "double-dipping" by Perkins-Johnson.

Defendants counter that Perkins-Johnson's tort claims against Evans for negligence are neither implicated nor barred by Delaware's workers' compensation exclusivity doctrine governing employee-employer relationships. Defendants reason that Evans was not Perkins-Johnson's employer, Evans was not Perkins-Johnson's employee, and Evans was not Perkins-Johnson's co-worker.

It is well-settled that an employer who provides workers' compensation to an employee cannot be sued for negligence by that employee.[30] The purpose of Delaware's workers' compensation is "to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of civil litigation."[31] Section 2363(e) of Delaware's Workers' Compensation Act specifically allows third-party tort claims[32] Additionally, Delaware's Workers' Compensation Act was

---

[30] *Rafferty v. Hartman Walsh Painting Co.*, 760 A.2d 157, 159 (Del. 2000); *Kofron v. Amoco Chemicals Corp.*, 441 A.2d 226, 231 (Del. 1982); *Segura v. M Cubed Technologies, Inc.*, 2019 WL 1504048, at *1 (Del. Super.);

[31] *Kelley v. Perdue Farms*, 123 A.3d 150, 153-54 (Del. Super. 2015) (citing *Kofron v. Amoco Chemicals Corp.*, 441 A.2d 226, 231 (Del. 1982)); *see also* 19 *Del. C.* § 2306(a) "Except as otherwise indicated, this chapter shall apply to the employer and employee in any employment in which 1 or more employees are engaged."

[32] 19 *Del. C.* § 2363(e):

> In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or the employee's dependents or personal representative would be entitled to recover in an action in tort. *Any recovery*

amended in 2016 to carve out an exception to workers' compensation exclusivity, permitting recovery of "uninsured motorist benefits, underinsured motorist benefits, and personal injury protection benefits"[33] in addition to workers' compensation.

In *Bell Atlantic-Delaware v. Saporito*,[34] the Delaware Supreme Court rejected workers' compensation exclusivity as a bar to an employee's recovery in a subsequent personal injury action against a third-party tortfeasor.[35]

In *Henry v. Cincinnati Insurance Company*,[36] the Delaware Supreme Court recognized the severability of different types of coverage under an automobile liability policy that an employer had purchased from a third-party insurance carrier. An employee, injured while driving a work vehicle, received workers' compensation benefits and then sought UIM benefits.[37] The *Henry* Court held that "an injured worker who receives workers' compensation benefits is not barred by

---

*against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery,* and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits, except that for items of expense which are precluded from being introduced into evidence at trial by § 2118 of Title 21, reimbursement shall be had only from the third-party liability insurer and shall be limited to the maximum amounts of the third party's liability insurance coverage available for the injured party, after the injured party's claim has been settled or otherwise resolved. (emphasis added).

[33] 19 *Del. C.* § 2304 (2016).
[34] 875 A.2d 620 (Del 2005).
[35] *Id.* at 622-23.
[36] 212 A.3d 285 (Del. 2019).
[37] *Id.* at 290.

20

the pre-amendment version of the exclusivity clause from recovering underinsured-motorist benefits under an automobile liability policy that his or her employer has bought from a third-party insurance provider."[38] The *Henry* Court noted that the employers' workers' compensation and business automobile policies were two separate policies and that the insurance carrier was not being sued in its capacity as a workers' compensation carrier.[39]

The Court finds that Delaware's workers' compensation exclusivity doctrine does not apply in this case to preclude the State's defense and indemnification of Evans in the underlying tort action brought by Perkins-Johnson. While an employee who collects workers' compensation benefits from their employer cannot then recover from their employer for negligence, Perkins-Johnson brings the underlying tort action against Evans alone. The State is not a defendant in the underlying litigation. Evans is neither Perkins-Johnson's employer nor Perkins-Johnson's co-worker. At the time of the Accident, Evans was a third-party permissive driver of a State-owned vehicle during a State-mandated driver's education course. Perkins-Johnson's receipt of workers' compensation benefits does not preclude Perkins-Johnson's tort suit against a third-party driver. Therefore, the State has a duty to defend and indemnify Evans in the underlying tort action.

---

[38] *Id.* at 289.
[39] *Id.* at 290.

The State's public policy argument - that coverage of Evans under the State's PMA Policy would essentially amount to Perkins-Johnson's "double-dipping" and the State having to pay out twice for both workers' compensation benefits as well as liability coverage – is unpersuasive. This concern already is addressed by the plain language of 19 *Del. C.* § 2363(e).[40] Pursuant to Section 2363(e), the State would not be "paying twice."

### *Waiver and Estoppel*

Defendants raise the alternative defenses of waiver and estoppel. Defendants claim that the State either waived its ability to disclaim coverage by its actions in the underlying tort suit, or the State should be estopped from changing its initial coverage position because the State represented Evans in the underlying lawsuit for the past several months.

Defendants also contend that Evans detrimentally relied upon the State's defense and Evans did not notify Travelers' of any suit against her. Evans suffered a prejudicial change of position because Travelers issued Evans a denial of coverage letter based in part on lack of notice of the underlying tort litigation.

---

[40] 19 *Del. C.* § 2363(e) provides:

"In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries shall first reimburse the employer for any amounts paid or payable under the Workers' Compensation Act …."

The State counters that the affirmative defense of detrimental reliance is inapplicable because Evans has failed to allege how, if at all, Evans materially changed her position in any way based upon any representations or statements made by the State.

### Waiver

It is well settled in Delaware that a party may waive its rights.[41] However, the standards for proving waiver of a contractual right under Delaware law are "quite exacting."[42] Waiver is the voluntary and intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power. Waiver implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those rights.[43] The facts relied upon to prove waiver must be unequivocal. Defendants claiming waiver of a contractual requirement or condition must show three elements: "(1) there is a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition."[44]

---

[41] *Bantum v. New Castle Cty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50–51 (Del. 2011); *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005) (citing *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972)).
[42] *Id.* (quoting *Am. Family Mortg. Corp. v. Acierno*, 1994 WL 144591, at *5 (Del.)).
[43] *Bantum,* 21 A.3d at, 50–51.
[44] *AeroGlobal,* 871 A.2d at 443.

Viewed in the light most favorable to the State, the record facts show that the Accident occurred in 2016. Perkins-Johnson filed the underlying tort litigation against Evans almost three years later in 2018.[45] The State provided Evans with defense counsel under its PMA Policy and filed an answer on Evans' behalf, asserting defenses to Perkins-Johnson's tort claims in the underlying litigation. The State did not provide Evans with a reservation of rights letter at the time of filing. In 2019, the State sent Evans a denial of coverage letter, disclaiming its obligation to defend and indemnify Evans in the underlying tort litigation, and citing PMA Policy exclusions and knowledge the State obtained during discovery that Evans was an Insured under the Travelers Policy. The State argues it only became aware Evans was an Insured under the Travelers Policy through the course of discovery, which in turn affected the timeliness of the State's denial of coverage decision.

The dispute in this case centers on whether the State intended through its conduct to waive its ability to disclaim coverage. From the date of the Accident to the date the State sent Evans its denial of coverage letter, the PMA Policy exclusions remained unchanged. The fact that the State was unaware Evans was also an Insured under the Travelers Policy when the State commenced Evans' defense in the underlying litigation does not alter the terms of the PMA Policy or the language of the PMA Policy exclusions. The Court finds that the State's initial decision not to

---

[45] *Diona Perkins-Johnson v. Mary R. Evans*, N18C-09-228 MMJ, Trans. ID 62671370.

apply the PMA Policy exclusions, the State's failure to provide Evans, with a reservation of rights, and the State's actual defense of Evans constitute waiver of the State's ability to subsequently disclaim the State's initial coverage decision.

## Estoppel

Estoppel applies "when a party by its conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to h[er] detriment."[46] To establish estoppel, the party must show: (1) lack of knowledge or the means of obtaining knowledge of the truth of the facts in question; (2) reliance upon the conduct of the party against whom estoppel is claimed; and (3) prejudicial change of position as a result of reliance.[47]

Defendants allege that a school official told Mr. Evans that the school's insurance—the State's PMA Policy—would handle any claims resulting from the Accident and would provide Evans with liability coverage. Defendants allege that Mr. Evans was led to believe that Mr. Evans' insurance carrier, Travelers, did not need to be involved and, as a result, Mr. Evans did not notify Travelers of the underlying tort litigation against Evans. These allegations have not been refuted by any record evidence as part of these cross-motions for summary judgment.

---

[46] *Bantum*, 21 A.3d at 51.
[47] *Id.* at 50–51.

25

Travelers was not notified of the underlying tort litigation until June 28, 2019, over nine months after it was commenced. Evans later received a denial of coverage letter from Travelers based, in part, on the late notice to Travelers of that suit. Travelers was not able to participate in the defense of the underlying tort action up until the time Travelers was notified.

The State had ample opportunity to bring in Travelers sooner. In the three years following the Accident, and in the nine months following the initial filing of the underlying tort litigation against Evans, nothing prevented the State from merely asking Evans' parents whether they had insurance.

Evans' and Travelers' positions have changed as a result of the State's conduct in the underlying litigation. Travelers was prevented from participating in Evans' defense at an earlier stage in the underlying tort litigation. Travelers' ability to investigate the Accident, retain counsel, and to control Evans' defense strategy were frustrated. Therefore, the Court finds that the State should be estopped from changing its initial coverage position, almost three years after the date of the Accident and over nine months after the underlying tort litigation was commenced.

The Court finds that Defendants' affirmative defenses of waiver and estoppel prevent the State's denial of primary liability coverage for Evans under the State's PMA Policy against Perkins-Johnson's tort claims in the underlying tort litigation.

## CONCLUSION

The Court finds that Evans is covered by the State's PMA Policy in the underlying tort litigation. Evans is an Insured under the State's PMA Policy as a permissive user of a State-owned driver's education vehicle covered under the PMA Policy. None of the PMA Policy exclusions apply.

Pursuant to the PMA Policy, the State is obligated to continue providing Evans with a defense against Perkins-Johnson's tort claims in the underlying litigation. The State is obligated to provide liability coverage in the event Evans is found liable. The PMA Policy is Evans' primary coverage for the underlying tort litigation. The Travelers Policy is secondary insurance available to Evans for damages in excess of the primary bodily personal injury coverage under the PMA Policy. Travelers may in the future participate in Evans' defense.

**THEREFORE,** the State's Motion for Summary Judgment is hereby **DENIED.** Evans' Cross-Motion for Summary Judgment is hereby **GRANTED.** Travelers' Cross-Motion for Summary Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston

27