**Betty BANTUM, Plaintiff Below–Appellant,**

v.

**NEW CASTLE COUNTY VO–TECH EDUCATION ASSOCIATION, Defendant Below–Appellee.**

No. 519, 2010.

Supreme Court of Delaware.

Submitted: March 11, 2011.

Decided: May 18, 2011.

4. Appellant's Appendix, A–102.    5. Ibid.

Elwood T. Eveland, Jr., Esquire, of The Eveland Law Firm, Wilmington, Delaware, for Appellant.

Stephen J. Milewski, Esquire, of White & Williams LLP, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Title 14, section 1056(h) of the Delaware Code provides that "[a]ny school board which permits the use of public school property for any use other than for public

school use shall not be liable in tort for any damages by reason of negligence in the construction or maintenance of such property." Plaintiff–Below/Appellant, Betty Bantum, allegedly suffered injuries when she slipped and fell on an icy parking lot on the premises of Defendant–Below/Appellee, New Castle County Vo–Tech School District ("NCVTSD").[1] NCVTSD had leased the premises to a local organization for an event. Bantum contends that the Superior Court erred in granting summary judgment for NCVTSD because section 1056(h) immunity does not apply to negligence for failing to inspect the premises and failing to warn of known and existing dangers. Bantum also contends that the Superior Court erred in granting summary judgment for NCVTSD because NCVTSD waived, or should be estopped from asserting, section 1056(h) immunity.

We conclude that section 1056(h) provides NCVTSD with immunity in these circumstances. We also conclude that NCVTSD did not waive, and is not estopped from asserting, that immunity. Accordingly, we find no merit to Bantum's appeal and affirm the judgment of the Superior Court.

### Facts

Over four years ago, the Afro–American Historical Society ("AAHS"), a tax-exempt organization, leased the Howard High School premises to hold a celebration in honor of African–American Heritage Day. The founder and executive director of AAHS, Harmon Carey, described AAHS as "an educational organization that seeks to create public awareness about the contributions, lifestyles and achievements of African–Americans in and from the State of Delaware." Although Howard High School did not always require lessees to complete a standard form (the "Facility Request Form") to lease the premises, Howard High School required AAHS to do so for this particular event. In the past, Carey had occasionally used the premises without completing the Facility Request Form, for example to house an art gallery in Howard High School. Carey explained:

> Well, usually if it was an event open to the public they required a form, but if you, for example, were to say to me, Mr. Carey, or Harmon, can I bring my family down to tour your gallery, they would not make me fill out a form to conduct a personal tour of the gallery.

The Facility Request Form included the following provision: "**WITHOUT EXCEPTION,** proof of liability insurance **MUST** accompany this form." Notwithstanding that clear requirement, Carey did not submit proof of insurance with the Facility Request Form. In fact, AAHS did not have liability insurance and never submitted proof of insurance in connection with any prior lease. Carey admitted that although AAHS had purchased liability insurance in the past, AAHS ceased doing so due to "lack of resources."

The Facility Request Form also provided that a "FEE WAIVER [would] be given to those with valid IRS proof of Non–Profit Status." Carey did not provide proof of AAHS's non-profit status. Carey explained that he "had a longstanding relationship with the school, so they're quite aware of [AAHS's] status with respect to the IRS."

Allen Schrum, the assistant principal of Howard High School, processed the Facility Request Form that Carey completed for the event. Schrum described the process of leasing the premises as follows:

---

1. Bantum named "New Castle County Vo–Tech Education Association" as the defendant, but the entity's correct title is New Castle County Vo–Tech School District.

Well, they come in and of course come to the office and ask, at which point we would tell them they need to do a Facilities Request Form, which they do, and then my main portion of this whole thing is just to check the schedule, check the calendar, make sure there's no conflicting events or dates or things going on at that time that wouldn't allow for it. If it's open and it's accessible and of course it's somebody that we know or we have known, then if it's there, we say yes, they can use it.

Schrum also commented on the Facility Request Form's proof of insurance requirement as follows:

If indeed it was somebody that we weren't aware of or didn't know, then there would be—some type of insurance would have to be requested, or submitted, and that probably wouldn't get by myself or the other person who signed the form.

\* \* \*

But I think it was just the familiarity again of somebody that's, you know, in and about that area that it was just like it's fine, let him use it.

With that factual background, we now turn to the injury that Bantum has claimed. On the day of the AAHS event, Bantum's daughter allegedly drove Bantum to an entrance of Howard High School. As Bantum stepped out of the car, "her feet [allegedly] slipped out from under her," and she fell, and "landed violently on her back and side." The record reflects that a snow storm had covered the area in the days leading up to the event. Bantum claims that the "parking lot was extremely slippery from the snow and ice."

### Procedural History

Bantum filed this action in the Superior Court against NCVTSD and AAHS. Bantum sought damages for her injuries, which she claimed were the direct and proximate result of the negligence of NCVTSD and AAHS. NCVTSD moved for summary judgment on the ground that it was immune from liability pursuant to title 14, section 1056(h) of the Delaware Code. The Superior Court granted that motion and relevantly explained:

Bantum essentially contends that a school's failure to warn of negligent maintenance is conceptually distinct from the underlying maintenance problem itself insofar as the application of § 1056(h) is concerned. The Court disagrees. Bantum's constricted reading would permit plaintiffs to make an end-run around § 1056(h) simply by reframing clearly barred maintenance-related claims as ones for negligent failure to warn. This result generates a risk of litigation that would undermine the statute's purpose by discouraging districts from allowing community groups to use their facilities.

Similarly, the fact that the Afro–American Historical Society did not possess liability insurance does not alter the applicability of the immunity provision, and NCVTSD cannot be deemed "complicit," as Plaintiff argues, because it did not insist upon proof of insurance as its internal form requires. In the first place, nowhere does the statute require that a school district permit use of its facilities only to groups or entities that are insured. The statute does not limit immunity from liability only where a school board has documentation or other proof that the use of its buildings was sponsored by a group with deep pockets. It makes far more sense to conclude that the proof-of-insurance requirement in NCVTSD's form is intended to provide an additional layer of protection for the school in the event that an injury occurs on its premises. Even if the Afro–American Historical Society violat-

ed the District's policy and the Agreement by failing to obtain insurance and to provide proof that it had done so, that omission does not defeat the district's § 1056(h) immunity.[2]

Thereafter, Bantum applied for certification of an interlocutory appeal. The Superior Court denied that application.[3] Bantum then settled her claim against AAHS, and the Superior Court dismissed the action. This appeal followed.

Bantum raises two arguments on appeal. First, Bantum contends that the Superior Court erred in granting summary judgment for NCVTSD because section 1056(h) immunity does not apply to negligence for failing to inspect the premises and to warn of known and existing dangers. Second, Bantum contends that the Superior Court erred in granting summary judgment for NCVTSD because NCVTSD waived, or should be estopped from asserting, section 1056(h) immunity.

### Discussion

We review the Superior Court's grant of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[4] We also review questions of statutory interpretation *de novo*.[5]

Title 14, section 1056 of the Delaware Code relevantly provides:

(c) The control, management and custody of school property and school equipment in all public school districts shall be subject to the laws of this State, the rules and regulations of the Department of Education and the rules and regulations of the school boards of the respective school districts. Each school board shall adopt a set of rules and regulations governing the use of school property and school equipment within the respective district subject to the provisions hereinafter set forth.

(d) The primary purpose for the use of school property is the education of children and youth. The use of such property for purposes other than the primary purpose shall not be permitted whenever such use would interfere with the primary purpose.... However, in order to encourage the citizens of any community to participate in worthwhile community activities, a school board shall consider any written request by 10 citizens of the respective district, or a recognized community organization, for the use of school property in such district for purposes other than the primary purpose. The decision of such school board regarding the granting of such requests shall be based upon a consideration of the following conditions, paragraphs (1) through (3) of this subsection, listed in order of importance:

(1) The facility requested for use has not been scheduled for use at the time requested;

(2) The use of the facility requested will be beneficial to children and youth and consistent with the program of education of the school district;

---

**2.** *Bantum v. New Castle Cnty. Vo–Tech Educ. Ass'n,* 2010 WL 335009, at *4 (Del.Super. Jan. 22, 2010) (citation omitted).

**3.** *Bantum v. New Castle Cnty. Vo–Tech Educ. Ass'n,* 2010 WL 541202 (Del.Super. Feb. 8, 2010).

**4.** *State Farm Mut. Auto. Ins. Co. v. Patterson,* 7 A.3d 454, 456 (Del.2010) (quoting *Brown v. United Water Delaware, Inc.,* 3 A.3d 272, 275 (Del.2010)).

**5.** *Id.*

(3) The use of the facility requested will serve a purpose that is educational, cultural, civic, political or recreational;

(e) A local school board may permit the use of school property or school equipment under its jurisdiction free of charge for ... specified nonprofit organizations.... In order to be eligible to use school property and school equipment free of charge, ... a specified nonprofit organization ... must be individually designated and approved by the local school board and must comply with all other building use policies approved by the local school board....

(f) Any school board may refuse to permit the use of any school property under its jurisdiction for any purpose which, in its discretion, would tend to interfere with the program of the public schools or would not be in harmony with the purposes of public education in such matters as character building, the development of unprejudiced social attitudes and the training of pupils for responsible citizenship....

\* \* \*

(h) Any school board which permits the use of public school property for any use other than for public school use shall not be liable in tort for any damages by reason of negligence in the construction or maintenance of such property.

### Section 1056(h) Immunity Applies to Failure to Inspect and Warn Actions

Bantum argues that "the inspection of premises and warning of existing dangers are not part of either construction or maintenance of school property." Consequently (Bantum argues), we should not bar her

action under section 1056(h). But, Bantum narrowly interprets the immunity that section 1056(h) provides. The statute is intended to "encourage the citizens of any community to participate in worthwhile community activities." [6] If we arbitrarily distinguished the failure to warn or inspect from the failure to maintain, we would hinder that purpose, discouraging school districts from leasing their premises.

In *Boyle v. Christina School District Board of Education*,[7] a plaintiff attempted to draw a similar distinction, arguing that section 1056(h) immunity should not apply because the act of erecting bleachers did not constitute "maintenance." [8] But, the Superior Court in *Boyle* rejected that argument. As the court explained:

> The term "maintenance" is not defined in the statute, and thus the Court must first look to the statute's purpose to glean some meaning. Section 1056(h) is intended to "encourage the citizens of any community to participate in worthwhile community activities" at school facilities. It goes without saying that the fulfillment of this purpose is in large part dependent upon the willingness of school districts to allow community use of their facilities. There is no financial incentive for school districts to lease their facilities as they are limited to charging users for the actual costs incurred by the district as a result of the use. Thus, if school districts are to be encouraged to allow the use of their facilities for community activities, they must have some assurance that allowing such use will not embroil them in lawsuits. This requires a broad reading of

---

**6.** 14 *Del. C.* § 1056(d).

**7.** 2009 WL 4653832 (Del.Super. Nov. 30, 2009).

**8.** *Id.* at \*2.

the immunity granted to them in subsection (h).[9]

We find the rationale of the *Boyle* court, and of the Superior Court in this case, to be persuasive. For purposes of section 1056(h) immunity, we conclude that there is no legal distinction *between* the failure to maintain a reasonably safe parking lot free of ice and snow *and* the failure to warn of a slippery parking lot. In these circumstances, the same policy considerations underlie both of those theories of negligence.[10]

### Failing to Follow "Rule" Does Not Constitute Waiver of, or Estoppel to Assert, Section 1056(h)

Bantum also argues that the Superior Court erred in granting summary judgment for NCVTSD because section 1056(h) immunity should not apply given that NCVTSD failed to comply with the requirements of section 1056(c). Section 1056(c) relevantly provides: "Each school board shall adopt a set of rules and regulations governing the use of school property...." The only "rule" that NCVTSD arguably adopted is found in the Facility Request Form: "**WITHOUT EXCEPTION,** proof of liability insurance **MUST** accompany this form." Bantum argues that NCVTSD should be precluded from asserting section 1056(h) immunity because Carey did not submit, and Schrum did not request, proof of insurance with the Facility Request Form. But, section 1056 does not explicitly provide that a school district forfeits its section 1056(h) immunity when it fails to follow a "rule." Consequently, Bantum's second argument is more properly cast in waiver or estoppel terms.[11]

### Neither Theory Bars the Protection of Section 1056(h) in These Circumstances

It is well settled in Delaware that a party may waive her rights.[12] But, the standards for proving waiver under Delaware law are "quite exacting."[13] "Waiver is the voluntary and intentional relinquishment of a known right."[14] "It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those [ ] rights."[15] We also have explained that "[t]he facts relied upon to prove waiver must be unequivocal."[16] Applying those principles, we have required a party claim-

---

9. *Id.* (citations omitted).

10. *See* RESTATEMENT (SECOND) OF TORTS § 359 (1965). *Cf.* RESTATEMENT (SECOND) OF TORTS § 343, cmt.d (1965) ("An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, *either* to make it reasonably safe by repair *or* to give warning of the actual condition and the risk involved therein.") (emphasis added); *Corey v. Davenport Coll. of Bus.,* 1999 WL 33439553, at *4 (Mich.Ct.App. July 6, 1999) ("Whether the plaintiff has argued the defendant's failure to warn or failure to maintain, the same considerations ... come into play regarding accumulated snow and ice.") (citing *Quinlivan v. Great Atl. & Pac. Tea Co.,* 395 Mich. 244, 235 N.W.2d 732, 740 (1975)).

11. At the Court's request, the parties submitted supplemental memoranda on the waiver and estoppel issues.

12. *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.,* 871 A.2d 428, 444 (Del.2005) (citing *Pepsi–Cola Bottling Co. v. Pepsico, Inc.,* 297 A.2d 28, 33 (Del.1972)).

13. *Id.* (quoting *Am. Family Mortg. Corp. v. Acierno,* 640 A.2d 655, 1994 WL 144591, at *5 (Del.1994) (TABLE)).

14. *Id.* (quoting *Realty Growth Investors v. Council of Unit Owners,* 453 A.2d 450, 456 (Del.1982)).

15. *Id.*

16. *Id.*

ing waiver to show three elements: (1) that "there is a requirement or condition to be waived," (2) that "the waiving party must know of the requirement or condition," and (3) that "the waiving party must intend to waive that requirement or condition."[17]

Waiver does not apply here. Taking the facts of record in the light most favorable to Bantum, she has not shown that NCVTSD intended to relinquish its right to section 1056(h) immunity.[18] Schrum's deposition testimony is the most favorable evidence for Bantum of NCVTSD's intent: "But I think it was just the familiarity again of somebody that's, you know, in and about that area that it was just like it's fine, let him use it." That statement does not satisfy the "quite exacting" standard for a waiver of immunity in these circumstances. Although Schrum's deposition testimony shows that NCVTSD waived the Facility Request Form's "rule" requiring proof of insurance, it does not demonstrate that NCVTSD intended to waive its independent and unrelated statutory grant of immunity under section 1056(h).[19]

▮ It also is well settled in Delaware that a party may be estopped from asserting her rights. We have explained that estoppel applies "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to h[er] detriment."[20] To establish estoppel, the party claiming estoppel must show the following three ele-ments: (1) she "lacked knowledge or the means of obtaining knowledge of the truth of the facts in question," (2) she "relied on the conduct of the party against whom estoppel is claimed," and (3) she "suffered a prejudicial change of position as a result of h[er] reliance."[21] We have explained that "reliance upon the conduct ... must be reasonable and justified under the circumstances."[22]

Estoppel does not apply here because Bantum has shown, at most, only one of the three elements required to prove estoppel. Viewing the facts in the light most favorable to Bantum, one can assume that Bantum "lacked knowledge of the truth of the facts in question."[23] But, the record does not reflect that Bantum was aware of any insurance coverage. Nor does the record show that Bantum "relied on the conduct" of NCVTSD, or that she "change[d] [her] position as a result of h[er] reliance."[24]

### *Conclusion*

The judgment of the Superior Court is **AFFIRMED.**

.

---

**17.** *Id.* (citing *Pepsi–Cola Bottling Co.,* 297 A.2d at 33).

**18.** *See id.*

**19.** *See id.*

**20.** *Waggoner v. Laster,* 581 A.2d 1127, 1136 (Del.1990) (quoting *Wilson v. Am. Ins. Co.,* 209 A.2d 902, 903–04 (Del.1965)).

**21.** *Id.*

**22.** *U.S. Bank Nat. v. Swanson,* 918 A.2d 339, 2006 WL 3952032, at *2 (Del.2006) (TABLE) (quoting *Dep't of Natural Res. v. Front St. Props.,* 808 A.2d 1204, 2002 WL 31432384, at *5 (Del.2002) (TABLE)).

**23.** *See Waggoner,* 581 A.2d at 1136.

**24.** *See id.*