# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| HARMAN INTERNATIONAL INDUSTRIES INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N22C-05-098 PRW CCLD |
| ILLINOIS NATIONAL INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, and BERKLEY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: February 2, 2023
Decided: April 24, 2023

*Upon Plaintiff's Motion for Summary Judgment,*
**DENIED.**

*Upon Defendants' Motion to Dismiss,*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, Robin L. Cohen, Esquire, Lorrie A. Levy, Esquire, COHEN ZIFFER FRENCHMAN & MCKENNA LLP, New York, New York, *Attorneys for Plaintiff Harman International Industries, Incorporated.*

Kurt M. Heyman, Esquire, Aaron M. Nelson, Esquire, Kelly E. Rowe, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, Alexander S. Lorenzo, Esquire, ALSTON & BIRD LLP, New York, New York, *Attorneys for Defendant Illinois National Insurance Company.*

Robert J. Katzenstein, Esquire, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware, Neal M. Glazer, Esquire, LONDON FISCHER LLP, New York, New York, *Attorneys for Defendant Federal Insurance Company.*

Robert J. Katzenstein, Esquire, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware, Cara T. Duffield, Esquire, WILEY REIN LLP, Washington, DC, *Attorneys for Berkley Insurance Company.*

**WALLACE, J.**

Harman International Industries, Inc., brings this action for breach of contract and declaratory judgment against its insurers for failing to indemnify it from a settlement in an underlying securities action. The insurers denied coverage asserting that an exclusion provision, commonly known as a Bump-Up Provision, barred coverage.

Before the Court are the parties' competing motions. The first is Harman's motion for summary judgment on its two claims. The second is the insurers' motion to dismiss the complaint. For the reasons set forth below, the Court **DENIES** each of these motions.

## I. THE PARTIES

Plaintiff Harman International Industries, Inc., is a Delaware corporation with its principal place of business in Connecticut.[1] It "is a global leader in connected car technology, including lighting, audio, design and analytics."[2]

Defendant Illinois National Insurance Company ("AIG") is a Pennsylvania corporation with its principal place of business in New York.[3]

Defendant Federal Insurance Company ("Chubb") is an Indiana corporation

---

[1] Compl. ¶ 16 (D.I. 1).

[2] *Id.* ¶ 2.

[3] *Id.* ¶ 17. Illinois National Insurance Company is a subsidiary of AIG. The Complaint identifies this defendant as "AIG" instead of the specific entity, Illinois National Insurance Company. *See id.* at 1. For clarity's sake, therefore, this Opinion too will refer to Illinois National Insurance Company as AIG.

with its principal place of business in New Jersey.[4]

Defendant Berkley Insurance Company (collectively, with AIG and Chubb, "Insurers") is a Delaware corporation with its principal place of business in Connecticut.[5]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE D&O INSURANCE

Harman purchased Directors and Officers ("D&O") insurance from Insurers.[6] The policy covered a term from January 29, 2016, through January 29, 2017.[7] Insurers issued the primary policy (AIG), first excess policy (Chubb), and second excess policy (Berkley), together providing $40 million in coverage.[8]   As relevant to this action, those policies all operate identically.[9]

The policies include an exclusion, also called a "Bump-Up Provision," within the definition of "Loss," that states:

> In the event of a **Claim** alleging that the price or consideration paid or
> proposed to be paid for the acquisition or completion of the acquisition
> of all or substantially all the ownership interest in or assets of an entity
> is inadequate, **Loss** with respect to such **Claim** shall not include any

---

[4]   *Id.* ¶ 18.  Federal Insurance Company is a subsidiary of Chubb.  The Complaint identifies this defendant as "Chubb" instead of the specific entity, Federal Insurance Company. *See id.* at 1.  For clarity's sake, therefore, this Opinion too will refer to Federal Insurance Company as Chubb.

[5]   *Id.* ¶ 19.

[6]   *Id.* ¶ 2.

[7]   *Id.* ¶ 23.

[8]   *Id.* ¶¶ 2, 24; *see id.,* Exs. A-1, A-2, A-3, A-4, B, C.

[9]   Compl. ¶ 25.  For ease, only the AIG Policy will be cited to.  *See id.,* Ex. B ¶ 14; Ex. C ¶ 3.

amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.[10]

"Non-Indemnifiable Loss" is defined as:

> **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.[11]

## B. THE TRANSACTION

On November 14, 2016, Harman and Samsung Electronics America, Inc., "announced they had entered into an Agreement and Plan of Merger."[12] On March 10, 2017, a subsidiary of Samsung that was created for the transaction, Silk Delaware, Inc., "merged with and into Harman" through a reverse triangular merger.[13] The result of the transaction was that "Harman continued as a wholly owned subsidiary of Samsung," and with certain exceptions, "outstanding Harman stock was cancelled and converted into a right to receive . . . cash."[14]

## C. THE *BAUM* ACTION AND SETTLEMENT

On July 12, 2017, Patricia B. Baum filed an amended class action complaint

---

[10]   *Id.*, Exs. A-1 to A-4 ("AIG Policy") § 13 (definitions).

[11]   AIG Policy § 13.

[12]   Compl. ¶ 42.

[13]   *Id.* ¶¶ 3, 42-43.

[14]   *Id.* ¶ 43.

against Harman and other parties alleging violations of Sections 14(a) and 20 of the Securities Exchange Act of 1934.[15] That action, filed in the United States District Court for the District of Connecticut, alleged "Harman issued a materially false and misleading Definitive Proxy Statement" so as to "secure shareholder support for the undervalued Acquisition."[16] In part, the *Baum* plaintiffs asked for "compensatory and/or rescissory damages against the [*Baum*] defendants."[17]

As part of the *Baum* plaintiffs' claims, they stated:

As a direct result of the defendants' negligent preparation, review and dissemination of the false and/or misleading Proxy, Plaintiff and the class were precluded both from exercising their right to seek appraisal and were induced to vote their shares and accept inadequate consideration of $112.00 per share in connection with the Acquisition. The false and/or misleading Proxy used to obtain shareholder approval of the Acquisition deprived Plaintiff and the Class of her right to a fully informed shareholder vote in connection therewith and the full and fair value for her Harman shares. At all times relevant to the dissemination of the materially false and/or misleading Proxy, defendants were aware of and/or had access to the true facts concerning Harman's value, which was far greater than the $112.00 per share that shareholders received. Thus, as a direct and proximate result of the dissemination of the false and/or misleading Proxy defendants used to obtain shareholder approval of and thereby consummate the Acquisition, Plaintiff and the Class have suffered damage and actual economic losses (i.e., the difference between the price Harman shareholders received and Harman's true value at the time of the Acquisition) in an amount to be

---

[15] *Id.*, Ex. D ("*Baum* Action Am. Compl.") ¶¶ 1, 115-22, 123-30. This is the Amended Complaint, the original *Baum* Complaint was filed on February 15, 2017. Pl.'s Mot. for Summ. J. Br., Ex. B (D.I. 20).

[16] *Baum* Action Am. Compl. ¶ 5.

[17] *Id.* at 50.

determined at trial.[18]

## D. INSURERS INVOLVEMENT IN THE *BAUM* ACTION

On July 20, 2017, AIG sent a letter to Harman acknowledging that the *Baum* Action was a securities claim covered by the policy.[19] Thus, it said it would reimburse Harman for its defense costs, but it reserved its rights on indemnification if, in its view, the claim was subject to a conduct exclusion.[20]

It was not until December 13, 2021, that AIG issued another letter denying coverage for any judgment or settlement based on the Bump-Up Provision.[21] Chubb and Berkley adopted AIG's coverage position.[22]

On June 23, 2022, the *Baum* parties entered into a stipulation of settlement for $28 million which was approved by the federal district court.[23] Neither the district court nor the *Baum* parties issued any statements concerning what the settlement constituted or represented. Instead, the parties said the settlement was to avoid costly

---

[18] *Id.* ¶ 120.

[19] Compl. ¶ 53 ("In a July 20, 2017 letter, AIG acknowledged that the Action is a **Securities Claim**, and indicated that it would reimburse Harman for its **Defense Costs**, subject to a reservation of rights with respect to coverage for a judgment or settlement of the Action based on a 'Conduct Exclusion' that only applies in the event of a final, non-appealable adjudication in the underlying action establishing liability." (bold in original)); Pl.'s Mot. for Summ. J. Br., Ex. L.

[20] Compl. ¶ 53; Defs.' Mot. to Dismiss Br. at 6 (D.I. 14).

[21] Compl. ¶ 54; Pl.'s Mot. for Summ. J. Br., Ex. M.

[22] Compl. ¶ 55.

[23] Pl.'s Mot. for Summ. J. Br., Ex. F.

continued litigation.[24]

## E. PROCEDURAL HISTORY

Harman has brought this action to resolve its coverage dispute with the Insurers. Rather than answer, the insurers filed a motion to dismiss Harman's complaint here.[25] Harman responded in opposition to that dismissal motion and simultaneously filed a motion for summary judgment on its complaint.[26] The Court heard argument on both motions and they are now ripe for decision.[27]

## III. THE COMPLAINT

In Count I, Harman alleges the Insurers breached the insurance policies by wrongfully excluding the *Baum* Action settlement from coverage.[28] In Count II, Harman seeks a declaration that the *Baum* Action settlement is covered by the policies and the Insurers are obligated to indemnify Harman for the settlement.[29] Harman also seeks attorney's fees and punitive damages.[30]

---

[24] *Id.* at 4.

[25] D.I. 14. Defendant Berkley joined Insurers AIG and Chubb's Motion to Dismiss, and also submitted a short brief in support of that motion. D.I. 16.

[26] D.I. 20.

[27] D.I. 47.

[28] Compl. ¶¶ 67-74.

[29] *Id.* ¶¶ 75-83.

[30] *Id.* at 22.

## IV. PARTIES' CONTENTIONS

### A. DEFENDANTS' MOTION TO DISMISS

Insurers insist the policies don't provide coverage for the *Baum* Action settlement.[31]

First, the Insurers say the transaction at issue, a reverse triangular merger, is an "acquisition."[32] Second, the Insurers contend that the *Baum* Action settlement represents an effective increase in shareholder consideration.[33] Third, the Insurers argue the policies' provisions are unambiguous and apply here to bar coverage.[34] Fourth, the Insurers contend the doctrines of waiver and estoppel are inapplicable here.[35]

In the Insurers' view, this Court's decision in *Northrop Grumman Innovation Systems, Inc. v. Zurich American Insurance Company*[36] controls and applying that analysis "for when coverage does not exist," results in a finding that the *Baum* Action settlement is barred by the Bump-Up Provision.[37] Specifically, the Insurers press that because the Bump-Up Provision doesn't specify that it applies only to certain

---

[31] Defs.' Mot. to Dismiss Br. at 16-31.

[32] *Id.* at 16-21.

[33] *Id.* at 22-28.

[34] *Id.* at 28-31.

[35] *Id.* at 31-33.

[36] 2021 WL 347015 (Del. Super. Ct. Feb. 2, 2021).

[37] Defs.' Mot. to Dismiss Br. at 1.

-7-

types of claims and because the *Baum* action's "sole measure of damages is the inadequacy of consideration paid" that satisfies *Northrop Grumman's* requirement that the *Baum* claim allege only inadequate consideration.[38]

## B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Harman's main argument is that the Insurers wrote the policies and the exclusion, so if the Insurers wanted the events here to have resulted in policy exclusion, they could have done so. And failure to do so explicitly, says Harman, means its claims are covered.

First, Harman points out that exclusions, generally, are construed strictly against the insurer.[39] Second, Harman suggests that the Bump-Up Provision does not apply to Section 14(a) claims, which the *Baum* Action is.[40] Third, Harman insists the Bump-Up Provision "only applies to an acquisition *by* Harman, rather than where Harman is acquired."[41] Fourth, Harman says the transaction was a merger, not an acquisition.[42] And even if it was partly an acquisition, says Harman, the Bump-Up Provision requires an acquisition only, not a semi-merger or semi-acquisition.[43] Additionally, Harman says that the Insurers never defined acquisition when they

---

[38] Defs.' Opp'n to Pl.'s Mot. for Summ. J and Reply Br. at 34-39 (D.I. 24).

[39] Pl.'s Mot. for Summ. J. Br. at 16-18.

[40] *Id.* at 19-25.

[41] *Id.* at 25 (emphasis in original).

[42] *Id.* at 31-32.

[43] *Id.*

-8-

easily could have, so any ambiguity thereon should be construed against the Insurers.[44] Fifth, Harman says the settlement does not represent an effective increase in consideration.[45] Specifically, this was a proxy violation action, not a standard fiduciary breach claim.[46] Harman calls the settlement payment "savings on defense costs and the value to Harman of avoiding the disruption of discovery" not "an increase in merger consideration paid to stockholders."[47] Sixth, Harman posits that whatever is decided concerning the settlement itself, attorney's fees are still due.[48] And last, Harman insists that because the Insurers waited five years to raise the exclusion, they have waived its application and are estopped from asserting that the exclusion applies.[49]

## V. STANDARD OF REVIEW

### A. MOTION TO DISMISS

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of

---

[44]   *Id.* at 33.

[45]   *Id.* at 34.

[46]   *Id.* at 35.

[47]   *Id.* at 36-37.

[48]   *Id.* at 38-41.

[49]   *Id.* at 41-43.

circumstances susceptible of proof under the complaint."[50] Under that Rule, the

Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even
> vague allegations as "well pleaded" if they give the opposing party
> notice of the claim, (3) draw all reasonable inferences in favor of the
> non-moving party, and (4) not dismiss the claims unless the plaintiff
> would not be entitled to recover under any reasonably conceivable set
> of circumstances.[51]

This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead

facts supporting an element of the claim, or that under no reasonable interpretation

of the facts alleged could the complaint state a claim for which relief might be

granted."[52]

## B. MOTION FOR SUMMARY JUDGMENT

Summary judgment is warranted upon a showing "that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."[53]

Thus, on the issue raised, the burden is on the moving party to demonstrate its

prayer for summary judgment is supported by undisputed facts or an otherwise

---

[50]   *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (cleaned up) (quoting Super. Ct. Civ. R. 12(b)(6)).

[51]   *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[52]   *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004) (citation omitted).

[53]   Del. Super. Ct. Civ. R. 56(c).

adequate factual record to support a legal judgment.[54] "If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder."[55]

The Court may grant a motion for summary judgment when: "(1) the record establishes that, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and (2) in light of the relevant law and those facts, the moving party is legally entitled to judgment."[56] The Court cannot grant a motion for summary judgment "[i]f . . . the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record . . . ."[57] But, at bottom, a claim "should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary."[58]

---

[54] *See CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015).

[55] *Id.*

[56] *Haft v. Haft*, 671 A.2d 413, 414-15 (Del. Ch. 1995) (citing *Burkhart v. Davies*, 602 A.2d 56, 58-59 (Del. 1991)); *see also Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. 1996) ("If the Court finds that no genuine issues of material fact exist, and the moving party has demonstrated his entitlement to judgment as a matter of law, then summary judgment is appropriate.").

[57] *CNH Indus. Am. LLC*, 2015 WL 3863225, at *1.

[58] *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999).

# VI. DISCUSSION

## A. THE COURT NEED NOT CONVERT INSURERS' MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT.

Rule 12(b) provides that if "matters outside the pleading are presented to and not excluded by the Court," on a motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[59]

"Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss."[60] There are two recognized exceptions to this rule, "[t]he first exception is when the document is integral to a plaintiff's claim and incorporated into the complaint."[61] And [t]he second exception is when the document is not being relied upon to prove the truth of its contents."[62] Additionally, a Court may take notice of publicly available facts not subject to reasonable dispute without transforming the motion to dismiss into a motion for summary judgment.[63]

Here, the Court need not treat the Insurers' motion to dismiss as a motion for

---

[59]   Del. Super. Ct. Civ. R. 12(b).

[60]   *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995).

[61]   *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612-13 (Del. 1996) (citation omitted).

[62]   *Id.* (citation omitted).

[63]   *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169-70 (Del. 2006).

summary judgment because while matters outside the pleadings are considered, those matters either fall into the rule's exceptions or are matters of which the Court can take notice of.

The Insurers rely on a press release issued by Harman to suggest that Harman itself characterized the underlying transaction not as a merger, but an acquisition.[64] Insurers also rely on filings in the *Baum* Action's docket.[65]

The Court can consider the *Baum* Action and related documents as the *Baum* Action is both referred to and relied upon in the Complaint, and also because the *Baum* Action is integral to this action.[66] Too, the Court can, and here will, take notice of the press release as it is a publicly available statement issued by Harman and in this instance its contents are "not subject to reasonable dispute."[67]

## B. *ONYX PHARMACEUTICALS, NORTHROP GRUMMAN* AND ITS PROGENY.

The issues presented here have been addressed by this Court and sister courts across the country. All of these actions revolve around similar situations where corporate fiduciaries settle claims alleging they committed certain bad acts and then seek indemnification from their insurers.

---

[64] Defs.' Mot. to Dismiss Br. at 20 n.10.

[65] *See id.* at 5.

[66] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 169 (citation omitted); *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d at 69-70.

[67] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 169 (citation omitted).

Those claims though might be barred by a Bump-Up Provision, which does not cover settlement amounts if they are based on certain conduct in the underlying action. So both this Court and its sister courts have needed to determine what the underlying actions that resulted in the settlements are and whether such settlements are excluded from insurance coverage by operation of a Bump-Up Provision.

In *Onyx Pharmaceuticals Inc. v. Old Republic Insurance Company*,[68] the California Superior Court considered whether a Bump-Up Provision applied to bar an indemnification claim based on an underlying lawsuit and settlement where the underlying action's plaintiffs alleged Amgen's purchase of Onyx (which became a wholly-owned subsidiary of Amgen) for $125 per share was undervalued.[69] The underlying action resulted in a settlement and Onyx sought indemnification of its settlement loss.[70] The California court found that because "the primary allegation [in the underlying action and settlement] was that the Board of Directors failed to obtain the highest price for the sale of Onyx" and because the court "was unable to craft superior insurance policy language" the exclusion applied to bar the

---

[68] 2020 WL 9889619 (Cal. Super. Ct. Oct. 1, 2020). The *Onyx* decision is a proposed statement of decision which has been cited in *Ceradyne, Inc. v. RLI Ins. Co.*, 2022 WL 16735360 (C.D. Cal. Oct. 31, 2022), *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2021 WL 4555188 (E.D. Va. Oct. 5, 2021), and *Northrop Gruman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015 (Del. Super. Ct. Feb. 2, 2021).

[69] *Onyx*, 2020 WL 9889619, at *2.

[70] *Id.*

indemnification claim.[71]

In *Northrop Grumman Innovation Systems, Inc. v. Zurich American Insurance Company*, this Court examined a Bump-Up Provision that was a near match to the one here.[72] There, the Court considered whether a Bump-Up Provision applied to bar an indemnification claim based on an underlying lawsuit and settlement where shareholders alleged the proxy solicitation statements published before a merger were false or misleading.[73] This Court found the underlying settlement claim did not exclusively allege inadequate consideration, rather the plaintiffs brought a 15 U.S.C. § 78n (commonly known as a Section 14(a)) claim, which "primarily was about Orbital Sciences's fiduciaries' 'dissemination of a materially false and misleading Joint Proxy Statement . . . used to obtain approval of the [m]erger.'"[74]

Because "a federal securities class action about fabricated proxy forms is not the narrowly tailored fit this Exclusion imagined," this Court found the *Northrop Grumman* Bump-Up Provision did not apply to bar coverage.[75]

---

[71] *Id.* at \*15; *see also* Final Statement of Decision After Phase One Count Trial On Declaratory Relief Claims at 40-41, *Onyx Pharmaceuticals, Inc. v. Old Republic Insurance Co. et al.*, Case No. CIV 538248 (Cal Super. Ct. Dec. 30, 2022). This decision is found in D.I. 48, Ex. A.

[72] 2021 WL 347015, at \*3.

[73] *Id.* at \*5.

[74] *Id.* at \*20 (alteration in original) (quoting underlying action's complaint).

[75] *Id.*

In *Joy Global, Inc. v. Columbia Casualty Company*,[76] the United States District Court for the Eastern District of Wisconsin similarly examined whether a settlement agreement was barred from indemnification via a Bump-Up Provision that was also similar, but not identical, to the one at issue here.[77] There, Joy Global announced its intention to be acquired by Komatsu, which resulted in shareholder lawsuits both pre- and post-merger.[78] All lawsuits alleged the acquiree's "directors and officers had issued a false or misleading proxy report for the purpose of inducing shareholders to vote their shares in support of a merger agreement which secured inadequate consideration for Joy Global's shares."[79] The federal court, applying Wisconsin law, found that the underlying actions' plaintiffs claimed inadequate consideration and "part of the Claim which was settled alleged inadequate consideration."[80] So the court found the settlements were barred by that Bump-Up Provision.[81] The federal district court distinguished this Court's *Northrop Grumman* decision by finding: (1) the two at-issue Bump-Up Provisions were different; and (2) under Wisconsin law, when the word "only" did not appear in that Bump-Up

---

[76]   555 F.Supp.3d 589 (E.D. Wisc. 2021), *aff'd Komatsu Mining Corp. v. Columbia Casualty Co.*, 58 F.4th 305 (7th Cir. 2023).

[77]   *Id.* at 592-93.

[78]   *Id.*

[79]   *Id.*

[80]   *Id.* at 594.

[81]   *Id.*

Provision, the exclusion was not limited to settlements for claims asserting nothing more than an inadequate consideration claim.[82]

The *Joy Global* decision was recently affirmed by the United States Court of Appeals for the Seventh Circuit in *Komatsu Mining Corp. v. Columbia Casualty Company*.[83] There, the Seventh Circuit too distinguished *Northrop Grumman* for the same reasons identified by the district court—the law on construing exclusion provisions in Delaware and Wisconsin is different, and the exclusion provision language in that case was different from the language at issue in *Northrop Grumman*.[84]

In *Tower Watson & Company v. National Union Fire Insurance Company of Pittsburgh, PA*,[85] the United States District Court for the Eastern District of Virginia

---

[82] *Id.* at 595-96.

[83] 58 F.4th 305 (7th Cir. 2023).

[84] *Komatsu Mining Corp.*, 58 F.4th at 309

> The state judge invoked what he understood to be a rule of Delaware insurance law that all conceivable ambiguities be construed against an insurer. But as the district judge pointed out, . . . that may be the law in Delaware but is not the law in Wisconsin. What's more, the language of the exclusion in *Northrop Grumman* differs from the definition of 'inadequate consideration claim' in Joy Global's policies. Komatsu Mining wants us to proceed as if all D&O policies contain the same language, but they don't, so we shouldn't.

(internal citation omitted)).

And the Seventh Circuit is correct, Delaware law commands "[c]ourts interpret exclusionary clauses with a strict and narrow construction and give effect to such exclusionary language only where it is found to be specific, clear, plain, conspicuous, and not contrary to public policy." *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 906 (Del. 2021) (cleaned up).

[85] 2021 WL 4555188 (E.D. Va. Oct. 5, 2021).

similarly decided the issue of whether certain settlements were barred by a Bump-Up Provision.[86] That federal court found the transaction at issue was not the type of acquisition contemplated by the Bump-Up Provision and found further that because an exclusion provision must be narrowly tailored under Virginia law—*i.e.* "unambiguously reference[d]"—any ambiguity must be resolved in favor of coverage.[87] The court found that because there was an ambiguity as to whether the transaction was barred by the Bump-Up Provision and because there was a reasonable interpretation suggesting the settlement was not barred by the Bump-Up Provision, the required narrow construction that must be given to insurance policy exclusion provisions meant the contested settlement-indemnification claim was not barred from coverage.[88]

In *Ceradyne, Inc. v. RLI Insurance Company et al.*,[89] the United States District Court for the Central District of California was confronted with a Bump-Up Provision nearly identical to the one at issue here.[90] There, a parent and subsidiary announced their intention to commence a tender offer where the parent would acquire the shares of the subsidiary and then commence a short-form merger.[91] In

---

[86] *Id.* at *1-2.

[87] *Id.* at *12 & n.27.

[88] *Id.* at *12-14.

[89] 2022 WL 16735360 (Cal. C.D. Oct. 31, 2022).

[90] *Id.* at *2.

[91] *Id.*

the underlying action, a lawsuit was filed against the subsidiary alleging it intentionally undervalued itself and thus sold itself for an inadequate price.[92] That underlying action resulted in a settlement.[93] The federal district court first noted that neither party disputed that the underlying action was an acquisition; the issue was whether it was the type of acquisition contemplated by the Bump-Up Provision.[94] The court, applying California law, found the facts "much more similar to *Onyx Pharmaceuticals*" and concluded "the underlying lawsuits alleged breaches of fiduciary duty almost exclusively based on [the subsidiary]'s directors undervaluing the company and accepting inadequate consideration for the acquisition."[95] And the court made note of certain salient facts: (1) the subsidiary's "insurance broker at the time of the underwriting of the policy similarly understood the lawsuits to fall under the Bump-Up Exclusion," (2) "the relief sought in the underlying cases was the amount by which the plaintiffs alleged [subsidiary]'s directors undervalued the company," and (3) the underlying plaintiffs sought damages equal to the difference between the fair value and the undervalued price.[96] So the *Ceradyne* court concluded the Bump-Up Provision applied to the underlying action and later found the

---

[92] *Id.*

[93] *Id.*

[94] *Id.* at *8-9.

[95] *Id.* at *10.

[96] *Id.* (citations omitted).

underlying action effectively increased consideration paid.[97]  In turn, the federal

district court found indemnification was properly barred.[98]

### C. FURTHER FACT-FINDING IS REQUIRED ON THE ISSUE OF WHETHER THE *BAUM* ACTION FALLS UNDER THE BUMP-UP PROVISION.

This dispute is over the application of these parties' specific Bump-Up

Provision.  Harman argues its settlement from the *Baum* Action should be covered

by the Insurers under the insurance policies.  The Insurers argue the settlement is

barred by the Bump-Up Provision.

Both sides contest the meaning and import of this Court's *Northrop Grumman*

decision[99] and the just-outlined decisions from elsewhere.  The *Northrop Grumman*

Bump-Up Provision is a near match to the one here.[100]

---

[97]  *Id.* at *10-11.

[98]  *Id.*

[99]  2021 WL 347015 (Del. Super. Ct. Feb. 2, 2021).

[100]  *Compare id.* at *19

> In the event of a Claim alleging that the price or consideration paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest or assets in an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price is effectively increased.

*with* AIG Policy § 13

> In the event of a Claim alleging that the price or consideration paid *or proposed to be paid* for the acquisition or completion of the acquisition of all or substantially all the ownership interest *in* or assets *of* an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price *or consideration* is effectively increased; . . . .

(differences italicized).

-20-

Neither party disagrees that the *Baum* Action settlement functions as a loss, and neither party disputes that the Bump-Up Provision is an exclusion. The issue is whether that exclusion "withstands narrow construction and clearly negates, after the fact, coverage extant in the first place."[101]

The Bump-Up Provision states:

> In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.[102]

Both parties present different compositions of the elements that might trigger the Bump-Up Provision. Harman says the Insurers must show:

> (1) the acquisition of all or substantially all the ownership interest in or assets of an entity; (2) a claim alleging only that the consideration exchanged in that acquisition was inadequate; (3) that such acquisition was by Harman; and (4) that the settlement for which coverage is sought actually represents the amount by which the acquisition price or consideration is effectively increased, and no other form of relief.[103]

The Insurers contest they must show:

> (i) Harman was acquired by Samsung, (ii) Harman's shareholders alleged the consideration received for that acquisition was inadequate,

---

[101] *Northrop Grumman*, 2021 WL 347015, at *19.

[102] AIG Policy § 13 (bold in original).

[103] Pl.'s Mot. for Summ. J. Br. at 2 (cleaned up).

and (iii) Harman's settlement with those shareholders represents an effective increase to that consideration.[104]

And a fair reading of *Northrop Grumman* would say that for the exclusion to apply: (1) the transaction must be "an acquisition of all or substantially all of an entity's assets or ownership"; (2) the *Baum* Action settlement must be related only to the allegation of inadequate consideration; and (3) the *Baum* Action settlement must represent an effective increase in consideration.[105] At this stage in the proceedings, before any discovery has taken place, the Court cannot affirmatively say whether the elements under this (or either of the parties') formulation have been met.

Concerning the first element, Harman makes two arguments—first, that the transaction only applies to an acquisition *by* Harman which did not happen here and second, that the transaction can only be an acquisition. Neither carries the day on the current record.

As to the first, Harman says that the Bump-Up Provision "only applies to an acquisition *by* Harman, rather than where Harman is acquired."[106] According to

---

[104] Defs.' Mot. to Dismiss Br. at 16.

[105] *Northrop Grumman*, 2021 WL 347015, at *20-21; *id.* at *20 ("[A] lawsuit that alleges only the consideration exchanged—nothing else—as part of only one specific control transaction (an acquisition of all or substantially all ownership interest or assets of an entity) was inadequate. The Exclusion pushes out Loss only that represents an effective increase of the claimant's inadequate consideration; no other Loss will do." (cleaned up)).

[106] Pl.'s Mot. for Summ. J. Br. at 25 (emphasis in original).

Harman, "[i]f Insurers wanted the [Bump-Up Provision] to encompass an acquisition *of* Harman, they were required to do so clearly and unambiguously, but failed to do so."[107] And where the term is deemed ambiguous, Harman says, then that ambiguity should be construed in favor of coverage.[108]

The term "entity," as used in the Bump-Up Provision,[109] is undefined. Insurers insist the Named Entity, *i.e.* Harman, is naturally included in the undefined general term entity.[110] Harman counters, because "Named Entity" is expressly defined elsewhere in the policies, "entity" as used in the Bump-Up Provision must mean any entity **but** the "Named Entity."[111]

Given the allowances the Court must grant at this preliminary stage, the Insurers seem to have better of the argument. The most natural read of "an entity" in context here would tend toward *all* entities without exclusion of the elsewhere-defined term "Named Entity."[112] To read "entity" the way Harman asks the Court to now do might well mangle what seems like an otherwise clear undefined

---

[107] Pl.'s Mot. for Summ. J. Br. at 25-26 (emphasis in original).

[108] Pl.'s Mot. for Summ. J. Br. at 26.

[109] AIG Policy § 13 (definitions) (In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate . . . .").

[110] Defs.' Opp'n to Pl.'s Mot. for Summ. J and Reply Br. at 26-27.

[111] Pl.'s Mot. for Summ. J. Br. at 25-26.

[112] *See, e.g.*, *Sycamore P'rs Mgmt., L.P. v. Endurance Am. Ins. Co. et al.*, 2021 WL 4130631, at *19 (Del. Super. Ct. Sept. 10, 2021) (when addressing an undefined word or term in a contract, the Court accepts what it "most naturally means" in the given context).

contractual term.[113]

Concerning the second argument, Harman states the transaction was clearly a reverse triangular merger, not an acquisition, and because the Bump-Up Provision only applies to acquisitions the exclusion does not apply.[114] But at some point, Harman itself labeled the transaction an acquisition.[115] So a fuller record is necessary before the Court can determine whether the transaction was in fact an acquisition or a merger. Both corporate acts involve similar features yet are treated differently under our law and under like Bump-Up Provisions.[116] Here, the Court must have a more developed record before deciding key issues.[117]

And concerning the additional elements necessary for the exclusion to apply—that the settlement should be related only to the allegation of inadequate

---

[113] *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1131 (Del. 2020) ("Delaware courts will not 'destroy or twist' the words of a clear and unambiguous insurance contract." (citation omitted); *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty." (citation omitted)).

[114] Pl.'s Mot. for Summ. J. Br. at 31-32.

[115] Defs.' Mot. to Dismiss at 20 n.10 (citing Press Release, Harman International Industries, Inc. (November 14, 2016), https://news.harman.com/releases/samsung-electronics-to-acquire-harmanaccelerating-growth-in-automotive-and-connected-technologies).

[116] *Northrop Grumman*, 2021 WL 347015, at *21 ("Two transactions that may be the same economically but are titled differently and demand dissimilar execution procedures have independent legal significance." (citations omitted)).

[117] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014) ("[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application." (citing *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002)).

-24-

consideration and must represent an effective increase in consideration—there is a genuine dispute about what the *Baum* settlement actually represents. Harman says because it was not just a Rule 14(a) action then it is automatically covered; while the Insurers say the damages in the underlying complaint were for inadequate consideration. The Court is being asked at this nascent stage to decide a critical fact—what does the *Baum* settlement actually represent? The *Baum* complaints and the few exhibits included in the record here simply do not provide the Court with enough facts to make those determinations.

### D. WAIVER AND ESTOPPEL ARE NOT APPLICABLE AT THIS STAGE.

As a final matter, Harman insists the Insurers either waived their ability to disclaim coverage, or that the Insurers should be estopped from changing their initial position on coverage.[118] Harman points to a 2017 letter from AIG where AIG acknowledged the *Baum* action; Harman says this letter led it to believe that the *Baum* action was covered.[119] The Court cannot rule, at this point, that either waiver or estoppel apply here.

"Waiver is the voluntary and intentional relinquishment of a known right."[120] To be sure, a party can waive a contractual right, "[b]ut, the standards for proving

---

[118] Pl.'s Mot. for Summ. J. Br. at 41-43.

[119] *Id.* (citing *id.*, Ex. L).

[120] *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982) (citations omitted).

waiver under Delaware law are 'quite exacting.'"[121]  Waiver "implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights."[122]  The facts evidencing waiver must be "unequivocal."[123]  And to prove waiver, a party must show "(1) that there is a requirement or condition to be waived, (2) that the waiving party must know of the requirement or condition, and (3) that the waiving party must intend to waive that requirement or condition."[124]

Relatedly, "estoppel applies when a party by its conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to its detriment."[125]  To prove estoppel, a party must show: "(1) it lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, (2) it relied on the conduct of the party against whom estoppel is claimed, and (3) it suffered a prejudicial change of position as a result of its reliance."[126]

A showing of both intent and prejudice are necessary under the analysis for examining estoppel prescribed by *Bantum v. New Castle County Vo-Tech Education*

---

[121] *Bantum v. New Castle Cty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50 (Del. 2011) (quoting *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005)).

[122] *AeroGlobal Cap. Mgmt., LLC*, 871 A.2d at 444 (citations omitted).

[123] *Realty Growth Invs.*, 453 A.2d at 456 (citation omitted).

[124] *Bantum*, 21 A.3d at 50-51 (internal quotation marks and citation omitted).

[125] *Id.* at 51 (cleaned up).

[126] *Id.* (cleaned up).

*Association.*[127]   All Harman has done to suggest prejudice is complain that "[i]t would be inequitable, and prejudicial, for the Insurers to snatch away that protection at this late hour."[128]   That's not enough.   And as to intent, this Court has consistently held that is a question of fact that shouldn't be resolved on a summary judgment record.[129]   Accordingly, the invocation of estoppel is premature at this stage.

Under the waiver argument, Insurers believe generally that an exclusion cannot be waived because it would "create coverage that was not contracted for."[130] Harman says, "Insurers can waive reliance on an Exclusion whose interpretation and application are subject to reasonable debate."[131]   But Harman provides no specific case law for this.   Rather, Harman merely posits that each of Insurers' cited cases concern clear and unambiguous policy language and so they are inapplicable here.[132] That's a generous read and view of the cited caselaw.

"Generally, waiver and estoppel may not be invoked to make a new contract, or to change radically the terms of the policy to cover additional subject matter."[133]

---

[127] *See id.*

[128] Pl.'s Mot. for Summ. J. Br. at 43.

[129] *Columbus Life Ins., Co. v. Wilmington Tr. Co.*, 2023 WL 1956868, at *8 (Del. Super. Ct. Feb. 13, 2023).

[130] Defs.' Opp'n to Pl.'s Mot. for Summ. J and Reply Br. at 46.

[131] Pl.'s Reply Br. at 20 (D.I. 32).

[132] *Id.* at 19.

[133] *St. Jones River Gravel Co. v. Hartford Fire Ins. Co.*, 1980 WL 308672, at *2 (Del. Super. Ct. July 7, 1980) (citations omitted).

"Waiver, [instead] can only be used to continue coverage which would otherwise be lost by a technical non-compliance with a forfeiture clause."[134] "It is well established that the coverage or scope of a policy may not be extended by waiver, implied from the insurer's reliance on exclusions in an initial rejection letter, which differ from those ultimately put forth as a defense."[135]

Here, like in *Martin v. Colonial Insurance Company of California*, it seems "the exclusionary clauses go to the coverage or scope of the policy and not to a condition of forfeiture."[136] So waiver may well not be applicable here.

In any event, waiver too is a fact-intensive inquiry.[137] Harman relies on a single letter.[138] To the extent that waiver might be applicable, Harman hasn't carried its burden to show the Insurers intended to waive any requirement or condition.

## VII. CONCLUSION

Accordingly, the Insurers' Motion to Dismiss is **DENIED**, and Harman's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____
**Paul R. Wallace, Judge**

---

[134] *Martin v. Colonial Ins. Co. of Cal.*, 644 F.Supp. 349, 352 (D. Del. 1986).

[135] *Id.* (citations omitted).

[136] *Id.*

[137] *See Bantum*, 21 A.3d at 50-51.

[138] *See* Pl.'s Mot. for Summ. J. Br., Ex. L.

-28-